IN THE

## SUPREMÈ COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN AUGUST TERM, IN THE THIRTY-FIFTH YEAR OF
OUR INDEPENDENCE.

———

JACKSON, *ex dem.* REILEY and others, *against* LIVING-
STON.

THIS was an action of ejectment, for lot number 3.
in the township of *Hector*, in the county of *Seneca*.
The cause was tried, at the *Seneca* circuit, on the 6th of
*June*, 1809, before Mr. Justice *Van Ness*.

At the trial, the plaintiff producedand re ad in evidence,
an exemplification of an award, found in the book of
awards, made by the commissioners appointed in pursu-
ance of " an act to settle disputes concerning lands in the
county of *Onondaga ;* which was filed in the clerk's

*It seems, that
the powers of
the Onondaga
commissioners
ceased on the
first Tuesday of
March,* 1802,
and were not so
revived by the
act of the 6th of
*April,* 1808, as
to render acts
done in the in-
termediate time
valid.
*Where a dis-
sent* is duly filed,
in the clerk's office of the county of *Cayuga,* it is sufficient, and a compliance with the act to
settle disputes concerning titles to land in the county of *Onondaga ;* and it might be filed in
the office of the clerk of *Onondaga.* The proof of a deed before a master in chancery, made
by the oath of a subscribing witness who stated, that he saw the grantor execute the deed,
and sincerely believed he was the same person named in the deed, on which the master cer-
tified, that he was satisfied of the due execution of the deed, and allowed it to be recorded,
was held to be sufficient to allow the deed, which had been recorded, to be read in evidence.

office of the county of *Seneca*, pursuant to law. This award was made by *James Emott and Vincent Matthews*, two of the commissioners, in favour of *John Lawrence*, and subscribed by them the 21st *March*, 1801.

The defendant then produced and proved the *dissent* of *Birdsey Norton* to the award, signed by him and dated the 28th of *August*, 1802, and which was filed in the office of the clerk of the county of *Cayuga*. The counsel for the plaintiff objected to the admission of this evidence of the dissent, because it was not filed in the office of the county of *Onondaga*, nor any note of the time of receiving it, made by the commissioners in their book of awards. It was then proved by the subscribing witness, that *James Emott*, one of the commissioners, knew of the dissent, and of its contents at the time; and that an action of ejectment, with his knowledge and advice, was brought, to give effect to the dissent, against the occupant, and a judgment by default obtained.

The defendant also gave in evidence a deed of the premises from *Thomas Tillotson* to *John Livingston*, dated 5th of *March*, 1794, a deed from *John Livingston* to *John Richardson*, dated 24th of *January*, 1797, a deed from *John Richardson* to *John Harris*, dated 16th of *January*, 1797, and a deed from *John Harris* to *Birdsey Norton*, dated 16th of *February*, 1797.

The defendant then offered in evidence a deed from *James Reiley*, one of the lessors, to *Thomas Tillotson*, dated the 5th *January*, 1784, which had been recorded in the office of the clerk of the county of *Cayuga*, by virtue of a certificate of the proof thereof, in the words following:

" *State of New-York, ss.* On this twelfth day of *June*, 1807, before me, came *Egbert Van Schaick*, one of the subscribing witnesses to the within instrument, being to me well known, who, after being duly sworn, said that he saw *James Reiley* duly execute said instrument. That at the time of the execution, he, the defendant, was a

clerk in the store of *Edward Cumpton*, in the city of
*Albany;* that at the said store of the said *Edward*, the
said *James Reiley* sold his pay, and brought other sol-
diers there to do the like; that the deponent sincerely be-
lieves, and is almost confident, that the said *James Reiley*
who executed the said instrument, was the same person
and no other, that is described therein, as a soldier, a
private of the first *New-York* regiment of troops, raised
in the state of *New-York*, commanded by Col. *Van
Schaick;* and, that *Benjamin Winne* and himself subscri-
bed as witnesses :—And therein appearing no alterations
material, and being satisfied, from the proof aforesaid,
of the due execution of the said instrument, I allow it to
be recorded.

ALBANY,<br>August, 1810.

JACKSON<br>v.<br>LIVINGSTON.

(Signed)                              *Sebastian Vischer*,
                              Master in Chancery."

The counsel for the plaintiff objected to the admission
of the deed in evidence, on the ground that the proof of
its execution was insufficient to allow it to be recorded;
but the objection was overruled by the judge, and the
deed was read in evidence.

The counsel for the defendant then offered to show
a title from *James Reiley* to *John Lawrence*, one of the
lessors, subsequent to that of the defendant's, to which
the plaintiff's counsel objected, and disclaimed any
other title than the one derived under the award of
the commissioners; but the judge overruled the objec-
tion, and the defendant then read in evidence a deed,
which had been duly recorded, from *James Reiley* to
*Alexander M'Dougall*, for the premises in question, da-
ted the 10th of *February*, 1784; a deed from *Egbert
Benson* and others, executors of *Alexander M'Dougall*,
to *John Lawrence*, one of the lessors, dated *January*
23, 1800. No evidence was given of the authority of
the executors to make the conveyance, nor that the deed
had been accepted by *Lawrence*.

ALBANY,
August, 1810.

JACKSON
v.
LIVINGSTON.

Upon this evidence, under the direction of the judge, the jury found a verdict for the defendant.

A motion was made, in behalf of the lessors of the plaintiff, to set aside the verdict, and for a new trial.

*Benson*, for the plaintiff. 1. The dissent of *Birdsey Norton*, was improperly admitted in evidence. When the dissent was delivered, *James Emott* was not a commissioner; his powers had ceased. By the 1st section of the act of the 30th of *March*, 1799, (22 *sess*. c. 68.) the period to which the powers of the commissioners was limited by the act of the 24th of *March*, 1797, (which expired the 1st of *June*, 1800,) was extended to the 1st day of *June*, 1801; and by the act of the 4th of *April*, 1801, (24 *sess*. c. 63. *Laws*, vol. 2. pp. 270, 271.) the time was further extended to the first *Tuesday* of *March*, 1802. No farther act was passed, until the 6th of *April*, 1803, (26 *sess*. c. 108. *Laws*, vol. 3. p. 355.) when the powers of the commissioners were renewed, and extended to the 1st of *April*, 1804. So that from the first *Tuesday* of *March*, 1802, to the 6th of *April*, 1803, there was an interval during which the powers of the commissioners had no existence; for the act of the 6th of *April*, 1803, is not retrospective. Indeed, such a retrospective act would have been illegal, and unjust, as after the expiration of two years, from the time of the award, the rights of the party became vested, so as not to be taken away by a retrospective act. If, therefore, Mr. *Emott* was not a commissioner, at the time the dissent was delivered to him, he was not bound to file it or to enter it in his book.

Again, if Mr. *Emott* was in office, yet the dissent, to be effectual, so as to bind the lessors, must be entered in the book of the commissioners. The mere delivery of it to one of the commissioners is not sufficient. The books are the only proper records of dissents; and to them,

not to the commissioners, are persons to resort in order to know whether any dissent is entered.

KENT, Ch. J. But we have already decided, in this very cause, (3 *Johns. Rep.* 455.) that the delivery of the dissent or notice thereof to the commissioners was sufficient, and if the commissioner neglects to enter it in his book, the party is not to suffer.

*Benson.* But I contend, that a delivery to a single commissioner is not sufficient; it must be to all the commissioners while sitting.

2. The defendant was bound to bring a suit; and the ejectment mentioned, was brought against persons named as tenants, who were not in possession of the land; and *John Lawrence*, the lessor, was not made a tenant, nor had he any notice of the action, and cannot, therefore, be bound by the suit.

SPENCER, J. The court decided in the case of *Jackson, ex dem. Scott,* v. *Huntley,* (5 *Johns. Rep.* 59.) that the clause in the act, rendering a suit necessary, did not apply to the case of a vacant possession.

*Benson.* But it was the intent of the law, that a suit should be brought within the time limited, in order to put an end to the question as to the title; the dissent in every case must be followed up by a suit. The act does not declare what form of action is to be brought, or in what court. It may be a suit in the court of chancery. There is no difficulty in the case of a vacant possession. It was competent for *Norton* to have brought his suit against *Lawrence,* and have affirmed him to be in possession, for the purpose of trying the title.

3. The defendant ought not to have been allowed to prove a common source of title; and if allowed to do so; yet the deed from *Reiley* to *Livingston,* ought not to have been admitted in evidence, as there was not sufficient proof of its due execution, to allow it to be recorded. The affidavit of the witness ought to be

positive, that he knows the grantor; it is not enough that he believes, or is almost confident that he knows him. Satisfactory evidence must be legal evidence; and legal evidence can be nothing less than positive proof that the grantor is the real person named. If this deed be rejected, then there appears to be a prior legal title in the lessors of the plaintiff, on which they must recover.

*Henry* and *E. Williams*, contra. 1. The act of the 6th *April*, 1803, continuing the former act, by its operation, revives and gives existence to the former fact, which is to be considered as having never expired. In the case of the *King* v. *Morgan*,* it was decided, that where an act which is temporary expires, and is afterwards continued, every person is estopped to say, that the former act is not in force. The same principle was held by Lord *Kenyon*, to be clear law, in the case of *Shipman* v. *Herbert*.† If this be so, then the commissioners must be considered as having power to receive dissents; and the delivery or notice of the dissent to Mr. *Emott*, one of the commissioners, was sufficient. There was no vested right in *Lawrence;* and if there was, the act does not take it away; it merely affects the remedy. *Lawrence* might have commenced his suit, so as not to be prejudiced.

By the act of the 6th of *April*, 1803, the commissioners, at the expiration of the time limited, are required to deposit all the books, writings and papers, which relate to the duties of their office, in the office of the clerk of the county of *Cayuga*. This dissent being found in the office of the clerk of *Cayuga*, it must be inferred, that it was deposited there by the commissioners, and is their official act.

A regular title was deduced to *Birdsey Norton*, who filed the dissent; and the only objection is to the sufficiency of the proof of the execution of the deed to *Living-*

* 2 *Stra.* 1066. *Lutw.* 215. 221.

† 4 *Term Rep.* 109.

_ston._ All that the law requires is, that the officer before whom the deed is to be proved, should be satisfied, as to the identity of the grantor, on the affidavit of a witness known to him; and the master certifies that he was satisfied by such proof.

ALBANY,
August, 1810.

JACKSON
v.
LIVINGSTON.

THOMPSON, J. delivered the opinion of the court. If _Norton_, who claimed to be proprietor and possessor of the lot, in 1802, when the award was made, filed his dissent, or gave notice of it, according to law, the lessors of the plaintiff were bound to show their title; and having shown none, the title disclosed by the defendant warranted the verdict.

I am inclined to think that the powers of the commissioners ceased, on the first _Tuesday_ in _March_, 1802, and were not revived between that time and _April_, 1803, so as to render valid any notice given to them in the intermediate time. But it will not be necessary to determine, whether notice of the dissent was duly given, provided the dissent was duly filed in the clerk's office; either mode of making known the dissent was a compliance with the statute.

The dissent was filed in the clerk's office of the county of _Cayuga_, within two years from the date of the award. This fact appears to be established, and the only question is, whether that was a proper office for the purpose, as the lands lay in the county of _Cayuga_.

The act establishing the _Onondaga_ board of commissioners, was passed in the year 1797, before the county of _Cayuga_ was erected, and when it formed a part of _Onondaga_ county. It directs that dissents of persons dissatisfied with awards shall be filed " in the office of the clerk of the county of _Onondaga_."

On the 8th of _March_, 1799, the county of _Cayuga_ was erected. This act declares, that all the records of the courts of common pleas, and the files and papers relative to all

lands and conveyances of lands in the county of *Ononda-ga*, which had formerly been filed in *Albany*, and all records of deeds and mortgages of lands in the same county, should be delivered and remain in the office of the county of *Cayuga*. But it further provided, " that nothing in the act should in any wise affect the law relative to settling disputes concerning the titles to lands in the county of *Onondaga*." It would seem to be the sense of this exception, that the county of *Onondaga* was not deemed to be divided, in respect to the proceedings of the commissioners, and that the former clerk's office (though for other purposes to be deemed the office of *Cayuga*) was still the clerk's office of the county of *Onondaga*, relative to these proceedings. This construction also appears to be consonant with the last provision in the act, which preserves the clerk's office of the county of *Cayuga*, as the place of deposit of all the former records and papers relative to lands and property in both counties. And this policy is pursued by the act of the 6th of *April*, 1803, which directs the commissioners, at the expiration of their trust, to deposit all their books and papers in the same office. Under this construction, the clerk's office of *Cayuga*, was not only a competent, but the exclusively competent office in which to file dissents to the award of the commissioners.

But a subsequent act, of the 30th of *March*, 1799, did make the division of the county of *Onondaga* apply to and affect the proceedings of the commissioners. It affected them in all the general and essential points in which they could reasonably have been affected. The commissioners are directed to file a book of their determinations, (and which included the entry of notice of dissents,) in the clerk's office of the county of *Cayuga*, as well as in the clerk's office of the county of *Onondaga ;* and they were to enter their determinations in the book provided for the county in which the lands lay, to which the determination related. The act does not go on and

say, that the person dissatisfied may file his dissent also in the office of the county in which the lands lay, but this must be deemed to be included in the general regulations. No determination, in the case before us, was required to be filed in the office of *Cayuga*, and if notice of the dissent had been given to the commissioners, the note of that dissent must have gone there also with the book. That was the office to which all persons interested in the determination of lands lying in *Cayuga* would apply for information. It would be very inconvenient and absurd to require the award of the commissioners, and their note of the dissent to be filed in one county, and the dissent itself in another. Nothing could have a greater tendency to mislead and distract the public attention. Every person would naturally look for the dissent in the place where the determination lay. The regulation of the principal subject must be deemed to embrace the more minute details of the proceedings, and so falling within the rule sometimes applied to the construction of statutes, *Omne majus in se minus complectitur.* (*Jenk. Cent.* 208.)

I think, therefore, that filing the dissent in *Cayuga* was sufficient. I mean not, however, to say, that filing it in the clerk's office of *Onondaga*, would not also have been sufficient, as that would have been within the letter of the former law, and not within any literal repeal of it. Perhaps the filing it in either office would have been sufficient, for the statute requires a most benign and liberal interpretation in favour of the act of the party filing his dissent; as his common law right of bringing his suit is made to depend on his entering his dissent within two years from the award. Considering the award, then, as open, the defendant showed a title out of the lessors of the plaintiff, and in *M'Dougall;* and he showed a prior title from *Reiley* to *Tillotson,* which was sufficiently proved to be read in evidence, by the certificate of the master in chancery, in which he declared himself satis-

fied, from the proof, of the execution of the deed. He states the proof to have been by a subscribing witness known to him, who swears to the identity of the grantor, from facts which are stated in the certificate, and which satisfied the master.

The motion for a new trial must, therefore, be denied.

Motion denied.