MORTON WOLLMAN, Appellant, v. THE FIDELITY & CASUALTY COMPANY of New York, Respondent.

Kansas City Court of Appeals, March 4, 1901.

1. **Insurance: RISK INCLUDED IN POLICY: INJURY TO EM-PLOYEE.** Defendant issued plaintiff a policy indemnifying him against common law and statutory liability for bodily injuries to employees growing out of his negligence, and described his business and the machinery used therein as that usual in buildings occupied for wholesaling dry goods and general merchandise. Afterwards plaintiff put in machinery for polishing rusted cutlery, and hired an adept polisher who was injured in running said machinery and had recovered damages therefor of the plaintiff. *Held,* the risk was not included in the policy and the defendant was not liable to indemnify the plaintiff. On motion for rehearing.

2. **Appellate Practice: HEARING ORAL ARGUMENT: PRINTED BRIEFS.** Under the present system of appellate practice, with printed abstracts, briefs and arguments, lawyers mostly are enabled to make a more satisfactory presentation of their cases than they would by oral argument; and if any one suffers by a failure to hear such argument, it is the judge, since he has the greater labor in reaching the history and points in the case from the printed briefs than he would if he had heard the argument.

3. ————: **DISCUSSING CASES.** It is a mistake to suppose that because an opinion does not discuss *seriatim* the numerous cases cited, that the same have not been noticed.

Wollman v. Fidelity and Casualty Co.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Wollmon, Solomon & Cooper* for appellant.

(1)   If there was any evidence upon which plaintiff was entitled to recover, under the issues joined by the pleadings, however slight the same may have been, the demurrer should have been overruled, and the case should have been submitted to the jury.   The court is required to make every inference of fact in favor of the party offering the evidence.   Wilson v. Board of Education, 63 Mo. 137 ; Buesching v. Gas Light Co., 73 Mo. 219 ; Frick v. Railroad, 75 Mo. 595.   (2)   Since the general agent of the insurance company knew at the time of the delivery of the policy, and long prior thereto, that the character of the goods handled by appellant were salvage wholesale dry goods and general merchandise, i. e., goods which had been damaged by fire and water, then the description in the policy of "wholesale dry goods and general merchandise" is sufficient to cover plaintiff's business and the business carried on by him in the premises mentioned in the policy.   Rickey v. Ins. Co., 79 Mo. App. 485 ; Hackett v. Underwriters, 79 Mo. App. 16 ; Chamberlain v. Assurance Co., 80 Mo. App. 589 ; Williams v. Ins. Co., 73 Mo. App. 607 ; Flournoy v. Ins. Co., 80 Mo. App. 655.   (3)   It appearing that at the time of issuing the policy in question, the company received the premium for the entire term for which the policy ran, and that the general agent, Rush, had at that time knowledge of the precise nature of plaintiff's business, and the kind and character of goods handled by him, and also had knowledge of the fact that such merchandise was cleaned and renovated by plaintiff, for the purpose of putting it in condition for market; good faith and fair dealing made

it his duty, and the duty of the insurance company, if they intended to insist upon a forfeiture, if any existed, to cancel the policy and return the unearned premiums; his failure to take such action is proof of a waiver. Trust Co. v. Ins. Co., 79 Mo. App. 362; Rissler v. Ins. Co., 150 Mo. 366; M'Elroy v. Assurance Co., 94 Fed. Rep. 990; Glover v. Ins. Co., 85 Fed. Rep. 125; Putnam v. Ins. Co., 4 Fed. Rep. 753; Assurance Co. v. Building Ass'n, 101 Fed. Rep. 77, decision by Judge Thayer. (4) The assured had the right, under the policy, to use in his place of business and in carrying on his business, such appliances as were usual, necessary or incident to the carrying on of the business in which he was engaged, or incidental thereto, and the question of whether or not the operation of a grindstone, propelled by an electric motor, for the purpose of cleaning and renovating rusty cutlery, used in such business, was incident to said business, was a question of fact to be submitted to the jury. Fox v. Accident Ass'n (Wis.), 71 N. W. Rep. 363; Mascott v. Ins. Co., 37 Atl. Rep. 255; Sims v. Ins. Co., 47 Mo. 54, 64; Johnson v. Accident Co. (Mich.), 72 N. W. Rep. 1115; Archer v. Ins. Co., 43 Mo. 434; Ins. Co. v. Lewis, 18 Ill. 562; Harper v. Ins. Co., 17 N. Y. 194; Harper v. Ins. Co., 22 N. Y. 441; Pindar v. Ins. Co., 36 N. Y. 648.

*Harkless, O'Grady & Crysler* for respondent.

If the court shall deem it necessary to examine cases kindred to the one at bar, and which sustain the view the lower court took of this case, we commend the following: Davis v. Ins. Co., 46 N. W. Rep. (Ia. 1890) 1073; School v. Ins. Co., 64 N. W. Rep. (S. Dak. 1895) 527; Philipsburg v. F. & C. Co., 28 Atl. Rep. (Pa. 1894) 823; People's Co. v. Ins. Co., 36 N. E. Rep. (Mass. 1894) 754.

SMITH, P. J.—The defendant, an incorporated insurance company, issued to the plaintiff a policy whereby it agreed to indemnify him for one year against loss from common-law or statutory liability for damages on account of bodily injuries suffered by any person while within the premises occupied by plaintiff and resulting from his negligence, subject, however, to the provisions of certain special agreements to be construed as co-ordinate conditions, amongst which was that to the effect: "That the policy does not cover loss for liabilities for injuries caused by the prosecution on the premises of any business not in the policy mentioned," and another was: "The statements contained in the following schedule are hereby made part of this contract, which statements the assured makes on the acceptance of this policy and warrants to be true, that is to say: * * * 5. Number of stories to each building, four. 6. The premises are occupied as wholesale dry goods and general stock of merchandise. * * * 10. The machinery used in these premises is that usual to such buildings. * * * 12. Occupation of employees are salesman, bookkeeper and others handling goods."

About five months after the issue of said policy the plaintiff purchased a fire-stock of hardware which was brought into plaintiff's store and placed on the fourth floor. The cutlery was found to be in a very rusty condition and the plaintiff concluded, before offering it for sale, to have it polished, and for that purpose he employed one Hoole, an adept polisher, who requested the former to erect certain machinery with which to do the work required on the floor where the cutlery was stored. Accordingly, the plaintiff, under Hoole's direction, caused to be erected the requested machinery which consisted of a two-horse electric dynamo to which a current of electricity was carried from an electric light company over wires entering the story through the top of a window therein. The power

was supplied by the dynamo which was connected by pulleys and belts with a grindstone.

The machinery when put in motion caused the grindstone to make about seventeen hundred revolutions to the minute. Hoole had just begun to use the grindstone when it bursted into many fragments inflicting upon him permanent physical injuries on account of which he sued the plaintiff for damages and recovered judgment for $1,025. This suit is brought on the policy to recover the amount of the judgment, costs and attorneys' fees, together with the amount of Hoole's surgical, hospital and medical bills, all of which were paid by the plaintiff. There was a trial in the circuit court where at the conclusion of the evidence a verdict was directed for defendant, and the question raised by the plaintiff's appeal is whether or not this action of the court shall be upheld. If Hoole's injury was within the policy it must be answered in the affirmative; otherwise, in the negative.

The contract must be construed in its entirety, that is, the policy and the statements specially set forth in the schedule and declared to be warranties must be construed together. The terms employed in the contract must be construed with reasonable liberality. The policy, as has been seen, does not cover any loss caused by the *prosecution on the premises of any business not therein mentioned.* In the schedule it was stated by the plaintiff that the premises therein described were occupied by him as "wholesale dry goods and general stock of merchandise" and by which statement it is implied that he was engaged in prosecuting the business of wholesale dealer in dry goods and general merchandise. It becomes, therefore, apparent that unless Hoole was injured while in plaintiff's employment and engaged in the prosecution of the business which the latter had designated in his statement, or, in other words, unless Hoole received the injury while participating in carrying

on the business of wholesale dry goods and general merchandise, the loss sustained by plaintiff in consequence of the injury is not covered by the policy.

It does not appear that Hoole had any mercantile experience. His specialty was that of polishing and burnishing rusty and tarnished cutlery. His duties under his employment were not those of a salesman, bookkeeper, porter or other employee engaged in carrying on the business of wholesale dry goods and general merchandise. The duties he was engaged to perform called for the exercise of mechanical skill, disassociated with the business in which the other employees of plaintiff were engaged. The fourth floor of the plaintiff's building had been converted into a workshop in which complex and dangerous machinery had been placed in the use of which skill was required. When defendant issued the policy the plaintiff had not converted the fourth floor of his building into a workshop, nor had he at any time previous thereto used any such machinery for polishing rusty cutlery in any part of his building. This was a new departure from the line of business in which he was engaged when the policy was issued. It was not even in the contemplation of the plaintiff when the contract for indemnity was entered into. Even if the defendant, through its general agent, was fully apprised at the time of the issue of the policy of the character of the plaintiff's business, it had no information in respect to this new branch of the plaintiff's business which he subsequently concluded to begin and carry on in the fourth story of his building. It is not pretended that plaintiff, in his negotiations with defendant's agent for the insurance, advised the latter that the mechanical business just referred to was embraced within the scope of that carried on by him or that it would likely be during the life of the policy. The notice which the plaintiff gave the defendant's agent touching the character and scope of his business has no pertinency to the pivotal issues

in the case. The plaintiff in his schedule stated that the machinery used in the premises was that usual in such buildings. By this statement we undertsand the machinery used in the premises was that usual in buildings occupied as "wholesale dry goods and general stock of merchandise."

Now, turning to the evidence, and we do not there find that machinery of the kind placed on the fourth floor of the plaintiff's building was in general use in other buildings where business like that of the plaintiff was carried on. Considering all the provisions of the contract which have been already quoted and we are unable to put so broad a construction upon the risk assumed as would be necessary to sustain the plaintiff's case. The function of a court is to construe and not to make contracts. And a construction of the contract that would include the risk in question would be no construction at all, but the making of a contract between the parties.

If the liability of the defendant under the terms of the written contract can, as plaintiff contends, be enlarged by showing that the operation of a grindstone, propelled by an electric motor for the purpose of grinding and polishing rusty cutlery, was usual and incident to the business of a wholesale dealer in dry goods and general merchandise, there is no evidence disclosed by the record before us tending to show such fact. There is no testimony showing the use of such grindstone so propelled to have been so general that the parties could be presumed to have taken it into consideration when they entered into the contract. An examination of the evidence has not convinced us that the plaintiff was entitled to a submission of the case to the jury for any of the reasons assigned by him. Our conclusion is, that, since it does not appear from the provisions of the contract and the evidence adduced in connection therewith that the defendant is liable for the loss, it follows that the circuit

court did not err in directing a verdict for him.    The judgment will accordingly be affirmed.    All concur.

ON MOTION FOR REHEARING.

SMITH, P. J.—The plaintiff complains that the opinion was written by a judge of the court who was not present at the argument of the case.    In view of our rule 17, that judge had the right to presume that no reference was made in the oral argument to any error or authority that was not referred to in the brief of his counsel.    Nor is it pretended that any suggestion was there made to which attention was not called in their very elaborate and comprehensive brief.    Besides this, the other two judges who heard the oral argument afterwards not only participated in the consideration of the case but concurred in the opinion expressed.    How then was the plaintiff prejudiced by the fact that the opinion was written by the judge who did not hear the oral argument?

It is generally desirable that each of the judges of an appellate court should hear the oral arguments in all cases coming before them, and in the decision of which they intend to participate, but under the present system of appellate practice, with the aid of the printer and typewriter, most lawyers are enabled to make a more satisfactory printed than oral presentation of their cases, and possibly this case affords no exception.    If any one suffers by the absence of a judge at the argument it is not the parties in the cause but the absent judge himself.    More time and labor is required by him to find out from the briefs the history and points in the case than if he had heard the oral presentation in the first instance.

We have again examined the plaintiff's printed briefs presenting his points and authorities, supplemented with an argument, in all covering over fifty pages, but find nothing therein

that escaped our notice when the opinion was written. The motion for the rehearing and the elaboration of the grounds thereof in the accompanying argument are based upon the assumption that certain facts which the evidence tends to prove were overlooked, but the opinion itself, when read in connection therewith, furnishes, as we think, a complete answer thereto. It is a mistake to suppose that because the opinion does not take up and discuss *seriatim* the forty or fifty adjudicated cases cited by the plaintiff that the same have not been noticed. An opinion of the breadth and scope which it is intimated should have been written would exceed the reasonable limits of any opinion in so simple a case.

The plaintiff complains that numerous decisions are cited in his original brief both from the Supreme and Appellate Courts reports that are directly in opposition to the rulings made by us in our opinion, but he does not indicate which of the forty or more of his citations he refers to, nor does he specify the proposition of the opinion they contravene.

The motion was drawn without reference to the requirements of our rule 20. It presents no ground for a rehearing within the meaning of that rule. We are required by the plaintiff to thresh the old straw over again. This we will not do.

Motion overruled.