JOHN M. CORNELL, Respondent, v. THE TRAVELERS' INSUR-
ANCE COMPANY, Appellant.

INSURANCE (ACCIDENT) — WHEN INSURER NOT LIABLE FOR EXPENSES
OF SUCCESSFULLY DEFENDED NEGLIGENCE SUITS BROUGHT AGAINST
INSURED. Where an application for an accident insurance policy stated
that it was to cover "Employer's liability on shop work and general lia-
bility on outside work, including teams," and the policy issued thereun-
der provided that "This insurance also covers the liability of the insured
to persons, other than employees, who may during the same term acci-
dentally sustain bodily injuries directly occasioned by the business opera-
tions of the insured as described in the application for this policy, under
circumstances which shall impose upon the insured a common law or
statutory liability to such persons therefor;" that "This company shall
have sole right, and it shall be its duty to negotiate settlements and
adjustments of all claims made against the insured and covered by this
policy. If legal proceedings be commenced to enforce such claim or
claims against the insured, this Company may pay the insured the full
amount for which it can be held liable in respect of such claim or claims,
failing which it shall defend said proceedings on behalf of the insured,
and shall have control of such defense," and that the company "shall not
be liable for any expenses incurred by the insured without its consent in
writing, nor for any liability voluntarily assumed, except that in cases of
accidental personal injuries to any employee while on duty in the trade or
occupation for which he has been employed, if the injuries are sufficiently
serious to necessitate immediate medical assistance, the same may be ren-
dered at the expense of this company, which will not, however, pay the
cost of any subsequent medical aid," the contract of the insurer is only to
indemnify the insured when his liability has been established as the
result of an action. It is not liable for his expenses in the successful
defense of negligence suits brought against him by persons not employees
which had no legal basis.

*Cornell* v. *Travelers' Ins. Co.*, 66 App. Div. 559, reversed.

(Argued May 1, 1903; decided June 2, 1903.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 6, 1901, reversing a judgment in favor of defend-
ant entered upon a dismissal of the complaint by the court at
a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Albert Stickney* and *Frank V. Johnson* for appellant. The respondent has wholly failed to bring his loss within the terms of the policy, or within any reasonable interpretation of the policy. (*W., etc., R. Co.* v. *T. Ins. Co.*, 180 Mass. 263; *P. I. Co.* v. *E. A. Ins. Co.*, 161 Mass. 122; *Horse Car Co.* v. *F. & C. Co.*, 160 Penn. St. 350; *Wollman* v. *F. & C. Co.*, 87 Mo. App. 677.) The policy must be interpreted according to the intent of the parties. (*Janneck* v. *M. L. Ins. Co.*, 162 N. Y. 574; *McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Solomon* v. *C. F. Ins. Co.*, 160 N. Y. 595, 601; *E. L. Ins. Co.* v. *L., H. & P. Co.*, 63 N. E. Rep. 54.) The whole instrument with its text is to be construed, and the " true intent and meaning of the parties " is to be ascertained from the instrument itself. (*Marvin* v. *Stone*, 2 Cow. 781; *Savage* v. *H. Ins. Co.*, 52 N. Y. 502, 504; *Weed* v. *Ins. Co.*, 116 N. Y. 106, 114; *Paul* v. *T. Ins. Co.*, 112 N. Y. 472, 479; *A. L. Co.* v. *F., etc., Co.*, 63 Minn. 286; *Hoven* v. *E. L. A. Corp.*, 93 Wis. 201.) The interpretation of the policy must be reasonable. (*Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298; *Schoellkopf* v. *Coatsworth*, 166 N. Y. 77.)

*Lemuel Skidmore* for respondent. Plaintiff has defended the eleven actions brought against him, and is now entitled in this action to recover from the defendant his reasonable expenditures in so doing. (*Pickett* v. *F. & C. Co.*, 60 S. C. 490; *Ross* v. *A. E. L. Co.*, 56 N. J. Eq. 46; *Janeck* v. *M. L. Ins. Co.*, 162 N. Y. 574.) When the language of an insurance contract is so ambiguous as to render it susceptible of two interpretations, it should be most strongly construed against the insurer. (*Marshall* v. *C. T. M. A. Assn.*, 170 N. Y. 438; *T. Co.* v. *T. G. Co.*, 50 App. Div. 490; *Wolverton* v. *F. & C. Co.*, 48 App. Div. 439; *Mathews* v. *A. C. Ins. Co.*, 154 N. Y. 457.) The policy here is not merely a contract of indemnity against damage, but it is a contract of indemnity against liability. (*Hoven* v. *E. L. A. Corp.*, 93 Wis. 201; *A. L. Co.* v. *F. & C. Co.*, 63 Minn. 286; *Pickett* v. *F. & C. Co.*, 60 S. C. 477, 490; *Fenton* v. *F. & C. Co.*, 48

L. R. A. 770; 11 Am. & Eng. Ency. of Law [2d ed.], 17; *Hoffman* v. *Æ. Ins. Co.*, 32 N. Y. 413.) The expenses incurred by plaintiff in defending those actions are the measure of damages for defendant's breach of contract in failing to defend the actions. (*Trustees of Newburg* v. *Galatian*, 4 Cow. 340.) The language of the policy should be construed according to men's ordinary understanding and use of words, and not according to subtle distinctions of legal phraseology, which are unknown to men of average intelligence who invest in these contracts. (*Janneck* v. *M. L. Ins. Co.*, 162 N. Y. 574; *Stewart* v. *B. & O. R. R. Co.*, 168 U. S. 445; *Hoven* v. *E. L. A. Corp.*, 32 L. R. A. 390.)

O'BRIEN, J.   The question presented by this appeal is with respect to the meaning and interpretation to be given to a written instrument made by the parties, whereby the defendant contracted to insure or indemnify the plaintiff against legal liability for accidents as specified and defined in the policy. The plaintiff was engaged in extensive operations in the manufacture and erection of structural steel and iron work for buildings and perhaps other structures. These operations required the employment of a great number of men, mechanics and laborers, and the work was of such a character as to suggest every safeguard against accidents and hence the plaintiff sought protection by means of the contract in question, which will be more particularly referred to hereafter. The plaintiff had contracted to furnish and put in place the structural iron work of a large building in process of erection in the city of New York. Before the work was entirely completed, and on the 8th day of August, 1895, the building accidentally collapsed and a large portion of the interior structure fell, whereby a number of persons were killed and a number injured. It is conceded that this accident was in no wise due to any act, default or neglect of the plaintiff who was contractor only for the structural iron work. The causes which produced the loss of life and the legal consequences of the accident have been discussed and determined in a recent case

16

in this court. (*Burke* v. *Ireland*, 166 N. Y. 305.) There was a desperate struggle to fix liability upon some one for the distressing result of the accident. This is very apparent from the numerous litigations that appear in the records of the courts for sometime after it occurred.

The owner of the building and all the contractors connected in any way with the work were sued either jointly or separately by the persons injured and by the representatives of the persons killed. It appears that eleven separate suits were commenced against the plaintiff by these parties. Two of these actions were brought to trial, and the trial in both cases resulted in a verdict for the defendant, the plaintiff in this action. After the verdicts in these two cases the remaining actions were abandoned and discontinued. The costs and expenses of the plaintiff herein in the defense of the several suits and proceedings mentioned amounted, as claimed, to over twelve thousand dollars. The plaintiff claims that the defendant is liable to him for this sum under the terms of the policy. At the trial, upon the close of the proofs, the complaint was dismissed, but the learned Appellate Division upon appeal reversed the judgment, by a divided court, and granted a new trial, and from the judgment of reversal the defendant has appealed to this court.

The sole question is whether the claim for expenses in defense of suits brought against the plaintiff that had no legal basis and were eventually abandoned after two of them had been successfully defended are covered by the terms of the policy. It, therefore, becomes necessary to examine the obligatory clauses of that instrument with some care since the result of the appeal must depend upon the meaning to be attributed to the language employed.

In the application for the policy it is stated that it was " to cover employer's liability on shop work and general liability on outside work including teams."

The policy itself insured the plaintiff " against loss from liability to employees of the insured, who may during a term of twelve months from noon of July 3rd, 1895, accidentally

sustain bodily injuries while actually occupied in the performance of duty in the trade or occupation for which they have been employed by the insured, under circumstances which shall impose upon the insured a common law or statutory liability to such employees by reason thereof.    *    *    *

"This insurance also covers the liability of the insured to persons, other than employees who may during the same term, accidentally sustain bodily injuries directly occasioned by the business operations of the insured as described in the application for the policy, under circumstances which shall impose upon the insured a common law or statutory liability to such persons therefor.    *    *    *

"This company shall have sole right, and it shall be its duty to negotiate settlements and adjustments of all claims made against the insured and covered by this policy. If legal proceedings be commenced to enforce such claim or claims against the insured, this company may pay the insured the full amount for which it can be held liable in respect to such claim or claims, failing which, it shall defend said proceedings on behalf of the insured, and shall have control of such defence.    *    *    *

"It shall not be liable for any expenses incurred by the insured without its consent in writing, nor for any liability voluntarily assumed, except that in cases of accidental personal injuries to any employee while on duty in the trade or occupation for which he has been employed, if the injuries are sufficiently serious to necessitate immediate medical assistance, the same may be rendered at the expense of this company, which will not, however, pay the cost of any subsequent medical aid."

The obligations which the defendant assumed are expressed in these provisions of the policy in language free from all ambiguity, and the court must give effect to them according to their plain scope and meaning. It will be seen that by the first clause quoted the defendant undertook to indemnify the plaintiff against loss from liability to employees and servants who might accidentally sustain bodily injuries during

the term of the policy and while actually engaged in the performance of duty. We are not concerned with that provision since none of the plaintiff's servants or employees were injured and none of them made any claim against him.

But the policy also covered in the next clause any common-law or statutory liability of the insured to persons other than employees who might accidentally sustain bodily injuries directly occasioned by the business operations of the insured under such circumstances as to create a liability on the part of the insured to the person so injured. This clause stipulates for indemnity to the insured against actual legal liability and does not cover groundless or fictitious claims made against him. If the injuries did not occur under such circumstances as to impose a legal liability upon the insured therefor they are not within the protection of the policy. The eleven suits brought against the plaintiff had no legal basis upon which to rest. They were simply groundless claims with no basis of legal liability upon the plaintiff as the result proved and as the present record conclusively shows. The stipulations of the contract exclude all liability on the part of the defendant for such claims. The liability of the insured to be sued by irresponsible parties upon groundless claims is not within the indemnity clauses of the policy. That was a risk that was not contemplated by the parties. The plaintiff assumed all such risks himself, or at least, the defendant did not assume them.

In the next clause of the policy the defendant became obligated to defend certain actions when brought against the plaintiff. If the defendant was bound by the contract to defend the eleven suits referred to or any of them there would be a legal basis for a recovery in this action to the extent of the expenses incurred by the plaintiff in making a defense which the defendant had agreed to make. But the cases which the defendant was bound to defend are carefully defined and limited by the terms of the policy. That obligation is limited to " claims made against the insured *and covered by this policy.*" The defendant did not stipulate to indemnify the plaintiff against the costs and expenses of defending himself

against fictitious or groundless suits. The protection afforded to the plaintiff by the policy was against some actual legal liability directly occasioned by his business operations. When the defendant received notice that suits had been commenced against the plaintiff, not by servants but by strangers, it had the right to determine for itself whether the injuries had in fact occurred under such circumstances as to impose a liability upon the insured therefor and to act accordingly, either by defending the suits or entirely ignoring them. Of course, in deciding not to defend the defendant had to take the chances on an adverse result. But we are not embarrassed in this case by any such question, since it appears that the suits defended were based upon a state of facts that imposed no liability upon the insured. It is not unusual for business men engaged in large operations to be sued by irresponsible parties upon claims having no legal or just basis but against which they are compelled to incur large expenses in order to defend themselves. That is really what happened to the plaintiff in this case and he must bear the loss unless it is fairly within the indemnity afforded to him by the defendant's contract and we think it is not.

It will be seen that by the last clause of the contract quoted above it was expressly stipulated that the defendant should not be liable for any expense incurred by the insured without the defendant's consent in writing except in the single case of an injury to an employee under such circumstances as to necessitate immediate medical assistance. This broad limitation, when read with the other carefully worded clauses of the contract, constitutes an insurmountable obstacle to the plaintiff's right of recovery in this case. The learned counsel for the plaintiff invokes the rule that when the language of an insurance contract is so ambiguous as to be susceptible of two interpretations it should be construed most strongly against the insurer. That, doubtless, is a just and correct rule, but its application to this case is not perceived, since the language of the policy seems to be free from all ambiguity.

But it is asserted that the parties must have intended that

claims for the costs and expenses of defending unfounded actions brought against the plaintiff were intended to be covered by the policy. It is conceded that such claims are not covered by the indemnity clause of the contract, and this concession would seem to be fatal to the judgment. The contrary view would simply mean that the defendant had assumed the obligation to defend or pay the costs and expenses of defending any and all actions brought against the insured, good, bad or indifferent, by third parties who might see fit to state untruly that the injury was of such a character, and occurred under such circumstances as to impose a liability upon the insured, however false or unfounded such statements might in fact be. This construction is altogether too lax to give to such an important contract. It rests largely, if not entirely, upon the arbitrary assumption that the parties intended something that they failed to express in words. If the injuries embraced in the eleven suits were not covered by the indemnity clauses of the policy, and yet the defendant had assumed the obligation to defend, it must follow that it assumed the obligations to defend suits for injuries *not covered* by the policy. That proposition must be maintained in order to hold the defendant liable for the claims in question. It can be maintained only by disregarding the plain words of the policy or adding to them some qualification that the parties did not express in words. The suits that the defendant stipulated to defend are very clearly defined in the contract. In the first place, they are defined as suits for injuries covered by the policy, and all agree that the injuries upon which the eleven suits were based are not, and none of them were, injuries of that character. On the contrary, they are admitted to be injuries not included in the policy at all, since no liability was imposed upon the insured in consequence. In the second place, they were defined as suits which the defendant should fail to settle or pay the damages claimed therein, and surely no one will claim that the defendant assumed any obligation to settle or pay false or unfounded claims. The obligation to

defend is expressly limited to cases where the insured was liable upon the facts and circumstances of the accident causing the injury. If such facts and circumstances did not exist and were not susceptible of proof, then the defendant could ignore the suits, as it did. On the other hand, the insured was bound to defend them himself, not only for the reason that they were not covered by the policy, but for the further reason that even if they were he was threatened with a liability far beyond the limit of his insurance. He was defending himself against claims outside the limits and terms of the policy, and for the expenses incurred in that respect the defendant has not agreed to indemnify. The defendant, by the express terms of the policy, was not liable under any circumstances for more than fifty thousand dollars for injuries to any number of persons resulting from any one accident. The amount claimed in the eleven suits aggregated nearly four hundred thousand dollars, and yet if it be true that the defendant was bound to defend any of them it was bound to defend all, and that too, although as to nearly three hundred and fifty thousand dollars of the claims, it had assumed no liability whatever, even though caused by the direct negligent act of the insured. The policy, in express terms, provided that the defendant should not be liable for any claim upon which suit should be commenced after the lapse of three years from the date of the accident, and yet if the insured is sued upon such a claim the argument in support of this judgment is to the effect that the defendant had stipulated to defend. It is quite apparent, therefore, that the argument of the learned counsel for the plaintiff proves too much. The only reasonable and just rule to adopt in the construction of such contracts is that the indemnity is not against the costs of suits against the insured founded on false claims, but against actual liability in the cases enumerated and specified, and so the courts have held. (*Worcester & S. S. R. Co.* v. *Travelers' Ins. Co.*, 180 Mass. 263; *People's Ice Co.* v. *E. L. Assur. Co.*, 161 Mass. 122; *Phillipsburg H. C. Co.* v. *F. & C. Co.*, 160 Pa. St. 350; *Wollman* v. *F. & C. Co.*, 87 Mo. App. 677.) It may be observed

that in one or more of these cases a recovery was had against the insured, but no one claimed that the judgment concluded the insured, and the company defended as an original question of liability.

But it is said that the defendant had an interest in the defense of the eleven actions against the present plaintiff, since if they succeeded they would be conclusive in favor of the latter in a suit upon the policy.    That proposition is by no means clear, but if we grant that it is it would not follow by any means that the defendant was bound to defend the actions. It often happens that the result of a suit will inure to the benefit of strangers to the controversy.    So it often happens that a party may be contingently, but ultimately made liable for the result of a suit between third parties, and yet the former may look on and take his chances on the results.    He cannot be made liable for the costs for prosecuting or defending such a suit unless by agreement he has expressly assumed such a liability, and no one has been able to point out any words in this policy whereby the defendant assumed any obligation to defend false or groundless claims, although the defeat of such claims may, in some sense, inure to the benefit of the defendant.    Some years ago a great many people were interested in the suit which involved the validity of the income tax.    They very clearly derived a pecuniary benefit from the result, but no one would claim that any person was under any legal or moral obligation to bear any part of the expense of the suit except those that agreed to it.    So that neither the defendant's interest in the eleven suits, nor the fact that the judgment, if it went the other way, might injuriously affect it, can supply the place of some words denoting an agreement to defend.    It is quite plain that the use of such words was not only avoided in the contract but that the words used imposed liability upon the defendant only with respect to personal injuries occasioned by the business operations of the insured under such circumstances as to impose a legal liability upon him.    No injury did occur under such circumstances and no liability whatever has been imposed upon the insured

and, therefore, the claim in question is not within the terms or scope of the contract.

But it is said that the defendant has assumed the obligation to defend false or unfounded claims when actions were brought upon them as in the case of the eleven suits in question, since suits upon claims covered by the policy could not be defended, and were not open to any defense. This seems to me to be a very narrow view of the scope and meaning of the stipulation. It is very difficult to imagine a case for the recovery of damages on the ground of negligence depending upon conflicting testimony which is not open to defense in the sense in which these terms were used in the contract. If the defendant has not succeeded in limiting its obligation to pay, settle or defend to such claims as are specifically described in the policy, that is, to claims imposing liability upon the insured, then the plainest language in a written instrument may be perverted by construction to meet and cover some particular hardship or equity that may be thought to exist in favor of or against one of the parties. The judgment now under review has converted an indemnity contract against certain specified and well-defined accidents into a general obligation to pay the insured the costs of all suits, however numerous, that he might incur in defending himself against claims that are concededly false and groundless, and that resulted in no liability whatever to the insured. There is no provision in the contract that covers such expenses. The clause in the policy permitting the defendant to pay, settle or defend the claims upon which the insured " *could be held liable* " was intended to confer upon it the right to control legal proceedings upon *such claims* at its election, but if it determined that the claims were not such as to impose any liability upon the insured, it had the right to ignore the suits as it did and take its chances with respect to any liability that might ultimately be imposed upon the insured, and since no liability resulted, the defendant is not in default with respect to any of the obligations that it assumed. The contention of the learned counsel for the plaintiff depends upon a proposi-

tion that would seem to be inadmissible in the interpretation of contracts, and that is that the defendant's liability does not depend upon the plain words of the policy, but upon the acts of third parties in bringing groundless suits against the insured, in which they have falsely or erroneously alleged facts to show that the injuries which they complain of were caused by his act, default or neglect. Had they stated the facts truly, and as they were subsequently found, no one would claim that the defendant was bound to pay any attention to the suits, and yet it is quite conceivable that the insured would be put to some costs to get rid of them. The argument to support a recovery of his costs from the defendant under these circumstances would be as strong then as it is now, but it is scarcely conceivable that any one would claim that such indemnity was contemplated by the contract. I have not omitted to examine certain cases that are supposed to sustain the plaintiff's theory of the case, of which *Trustees of Newburgh* v. *Galatian* (4 Cowen, 340) is a fair example. Those cases are clearly distinguishable from the one at bar in this most important particular. The instrument sued upon was not, as in this case, limited to indemnity against *liability* upon certain well-defined injuries, but in terms covered all *costs and expenses* that the party indemnified might incur in defense of suits against him.

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs.

GRAY, J. I concur in the reversal of the order of the Appellate Division for the reason that the application for the policy, read in connection with the clauses of the policy itself, make it clear that the defendant's contract was only to indemnify the plaintiff, when the liability of the latter had been established as the result of an action.

CULLEN, J. (dissenting). I vote for an affirmance of the order of the Appellate Division which granted a new trial. I assume that the first stipulation of the contract by which the defendant agreed to indemnify the plaintiff against liability

for accidents specified in the policy, standing alone would not obligate it to indemnify the plaintiff for the expenses of resisting suits in which the plaintiff was not legally liable. But in addition to the agreement for indemnity against liability the policy contained this further covenant on the part of the defendant: "This company shall have sole right, and it shall be its duty to negotiate settlements and adjustments of all claims made against the insured, and covered by this policy. If legal proceedings be commenced to enforce such claim or claims against the insured, this Company may pay the insured the full amount for which it can be held liable in respect of such claim or claims, *failing which it shall defend said proceedings on behalf of the insured, and shall have control of such defense."* The plaintiff had manufactured and erected the structural iron work in a large building in the city of New York, which building, during its course of construction, collapsed causing the death of a number of persons and severe injury to many more. For this accident a number of suits were brought against the plaintiff with other parties, the charge against the plaintiff being the defective character of his work. The defendant was notified of the prosecution of these actions. It disclaimed liability and refused to defend them or to pay the insurance. Thereupon the plaintiff, at his own expense, successfully contested the claims and it is for the expense of such contests that he seeks reimbursement from the defendant. There is no serious controversy as to the proposition that these claims were of such a character that had the allegations of the complaints founded therein been true they would have fallen within the terms of the policy and the defendant would have been obliged to indemnify the plaintiff for his liability on account of this accident. The defendant covenanted in express terms to defend all legal proceedings brought against the insured on "claims made against the insured and covered by this policy." If these suits fall within the terms of this covenant, then the defendant, by refusing to defend them, committed a breach of the covenant for which it

is liable apart from the other stipulations of the policy, and the order of the Appellate Division was correct. If the claims did not fall within this covenant, then there was no breach, and the judgment of the Trial Term was correct. I think the claims fell within the terms of the covenant. It is no part of the definition of the term "claim" that the demand should be well founded. A claim is "the assertion of a liability to the party making it to do some service or to pay a sum of money." (1 Bouv. Law Dict. 332.) It is defined by Judge STORY (*Prigg* v. *Penn.*, 16 Peters, 539) as "a demand of some matter as of right, made by one person upon another to do or to forbear to do some act or thing, as a matter of duty." It is contended, however, that the obligation to defend claims against the plaintiff was qualified by the condition that it should be a claim covered by the policy, and it is further contended that unless the claim was valid it was not covered by the policy. The first proposition is doubtless true, but it is on the second proposition that the whole controversy turns. I insist that a claim is covered by the policy when it is of such a character that if established the defendant, under the terms of the policy, would be liable for its payment. An action brought on a promissory note is none the less a claim on a promissory note because on the trial of the action the plaintiff is defeated, either by proof that the defendant never signed the note or that he had paid it. If the defendant's construction of this covenant is to prevail it leads to this most incongruous result. It says that it agreed to defend only valid claims, that is to say, claims which might be successfully established. In other words, it agreed to defend only indefensible claims, and if the claims could be successfully defended then there was no obligation on its part to defend them. Surely we should hesitate before giving the covenant any such remarkable construction. But we are not wanting in authority on the point. In *Trustees of Newburgh* v. *Galatian* (4 Cowen, 340) the defendants gave a bond indemnifying the plaintiffs against all actions, suits, costs, etc., for or by reason of the construction of a road. The action was brought to recover for expenses incurred by

the plaintiffs in the defense of a groundless suit brought in consequence of the improvement made. It was held that it was sufficient to bring the case within the condition of the covenant of indemnity that the plaintiffs were prosecuted for acts done in the prosecution of the work, whether the claim against them was well founded or not. This case has never been overruled but has been cited with approval by this court in *Corcoran* v. *Judson* (24 N. Y. 106). The same doctrine was held in *Chilsen* v. *Downer* (27 Vt. 536) where, on a bond indemnifying against liability for costs and expenses in consequence of levying an attachment on certain property, plaintiffs were allowed to recover the expense of a suit against them in which they succeeded.

There is another question in this case which, though not requisite to be authoritatively decided, it is necessary to consider, for on what is claimed to be its proper answer great stress is laid by the appellant, that is, how far an adverse determination in the action defended by the plaintiff would affect the defendant when the former made his claim upon it. It is asserted that a recovery against the plaintiff would not be any evidence in an action by him against the defendant. Now, I think the law is well settled to the contrary. The general rule seems to be that where one party either by express contract or by a rule of law is obliged to indemnify another against some liability, if the party indemnified gives notice to his indemnitor of the institution of an action against him for such liability, the indemnitor is concluded by the recovery of the judgment against the party indemnified. There are numerous cases in this state supporting this doctrine. (See 2 Sedgwick on Damages, § 805 ; *Kip* v. *Brigham*, 6 Johns. 157; *S. C.*, 7 Johns. 168; *Beers* v. *Pinney*, 12 Wend. 309 ; *Thomas* v. *Hubbell*, 15 N. Y. 405 ; *Konitzky* v. *Meyer*, 49 N. Y. 571 ; *Dubois* v. *Hermance*, 56 N. Y. 673 ; *Village of Port Jervis* v. *First National Bank*, 96 N. Y. 550 ; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137.) In *Thomas* v. *Hubbell* (*supra*) this court said : " It is, however, well settled, that where parties sustain the relations which existed

between the parties to this suit, that the party entitled to be indemnified may throw upon the indemnitors the burthen and risk of the primary litigation, by giving to them the opportunity of defending the original suit. It then becomes the defense of the indemnitors, and they are concluded by its result, at least in the absence of fraud or collusion between the prosecuting party and him whom they are bound to defend." In *Konitzky* v. *Meyer* (*supra*) it is said: "The position of the counsel, that an underwriter is not bound by a suit brought against the party he is bound to indemnify, in the absence of a provision in his contract to that effect, cannot be sustained either upon principle or authority. The law is otherwise." The case of *Insurance Companies* v. *Thompson* (95 U. S. 547) is strictly in point. There the plaintiffs in error insured the defendants in error against loss by fire on distilled spirits in a bonded warehouse, as to which the defendants had given a bond to the United States to secure the payment of the tax. The companies contended that because the spirits were destroyed by fire the government could not recover the tax. It was held that a recovery by the government of a judgment against the insured on their bond was conclusive on the companies, they having received notice of the suit and having declined to defend it. Hence, in case of a recovery against the plaintiff all he would have to do in an action against the defendant for indemnity against that recovery would be to show that the claim against him was of a character falling within the terms of the policy and the judgment against him would conclude the defendant on the question of liability. Therefore, the argument that it is unreasonable to attribute to the defendant an obligation to defend every baseless or ill-founded claim against the plaintiff entirely falls when it is considered that those claims, baseless and without merit as they might be, if unsuccessfully defended by the plaintiff would conclusively impose liability against the defendant for the amount recovered on them. The expenditure made by the plaintiff has directly inured to the benefit of the defendant. Had he failed to vigorously contest the claims

the defendant would be mulcted in many times the sum now sought to be recovered from it. If the covenant to defend is equally capable of two constructions it should be construed most favorably to the insured. This is an elementary rule. Within this rule (I think it is not at all necessary to invoke the rule) the defendant broke its covenant in failing to defend the suits against the plaintiff and is liable for the damages caused by such breach.

There is this further consideration to be borne in mind in construing the agreement of the policy with reference to defending suits. It is not only an agreement independent of that for indemnity against claims, but by it the defendant acquired additional rights as well as assumed additional obligations. As we have recently decided in the case of *Dunn* v. *Uvalde Asphalt Paving Company* (175 N. Y. 214) a party indemnified is not bound to await the adverse decision of an action brought against him, but may pay the claim even without suit, of course taking the risk of establishing in the action against his indemnitor the facts on which the liability proceeded as well as the reasonableness of the amount paid. By the agreement referred to the plaintiff lost this right and absolutely surrendered his defense of claims to the insurance company. As for example, the policy provided that the liability of the company to the plaintiff on a single claim should not exceed the sum of five thousand dollars. The plaintiff might be sued for a sum far in excess of five thousand dollars (in this case each claim exceeded that amount). If he deemed the claim well founded he might be willing to effect a settlement by paying a less sum and taking his chance of proving the propriety of the payment in his action against the defendant. . But of this right he was deprived by the terms of the policy. The defendant alone could determine whether the case was to be settled, and by an unwise contest the plaintiff might be mulcted in a sum largely in excess of his insurance, liability for which could have been avoided had he been permitted to negotiate for an adjustment of the claim. Therefore, the plaintiff surrendered substantial rights in con-

sideration of the defendant's covenant to assume the defense of suits and that covenant should receive a fair and reasonable construction.

PARKER, Ch. J., BARTLETT, J. (and GRAY, J., in memorandum), concur with O'BRIEN, J.; VANN and WERNER, JJ., concur with CULLEN, J.

Order reversed, etc.