## MARTIN WALSH AND MARY WALSH
### v.
## JOHANNA DUNN.

*Real Property—Covenant—Action of—Finding of Fact by Court—Liability of Grantor in Warranty Deed—Ejectment—Costs and Attorney's Fees.*

1. The same rule is applicable to the finding of facts upon trial by the court, as to verdict of a jury; and if, upon a conflict of the testimony, the finding in either case is not manifestly against the weight of the evidence, the judgment will not be disturbed on that ground.

2. The records of a judgment in a court of competent jurisdiction, in a case where the grantee in a warranty deed was a party to a suit in ejectment, and his grantor was notified to prosecute the suit, are conclusive evidence against that grantor in a suit against him by the grantee upon the covenants of the deed, upon a point directly decided in the former suit.

3. Where the grantee holds a covenant from his grantor that he will warrant and defend the title, the covenantee may defend for him, and when he has in good faith done so, the taxable costs and attorney's fees necessarily paid in such defense may be recovered from the grantor.

4. The same principle applies when the covenantee, after notice to his covenantor, seeks to obtain possession of that for which he has paid his money, relying upon his covenants, upon refusal or neglect of his grantor to put him in possession, and institutes proceedings to obtain such possession, and is cast in his suit for want of title in his grantor.

[Opinion filed December 16, 1889.]

Walsh v. Dunn.

APPEAL from the County Court of Will County; the Hon. C. B. GANSEY, Judge, presiding.

Mr. E. MEERS, for appellants.

A deed, after giving a description of the premises conveyed, stated that all the premises were situate in a certain section, etc., "according to a map drawn on back hereof;" held, that this made such plat a part of the deed and a descriptive part of the subject of the conveyance. Piper v. Connolly, 108 Ill. 646.

Where a lot is sold as platted, the fences and surveyor's marks upon the ground, as stakes, are facts indicating its boundaries, and will prevail over an attempt to describe the lot by distances. Bolden v. Sherman, 110 Ill. 418.

Oral evidence can be introduced to show boundary. Stevens v. Wait, 112 Ill. 544.

Fixed monuments control courses and distances. Piper v. Connolly, *supra*.

When a question arises as to the size of one of two lots, as affecting boundary lines between them, the location of the lots as actually staked must control. Murphy v. Riem, 104 Ill. 520.

The location of a lot may be fixed by a witness from common repute, irrespective of any plat. Holbrook v. Debo, 99 Ill. 372.

Unnecessary damages can not be recovered in this form of action. Wilcox v. Danforth, 5 Brad. 378.

In an action for the breach of the covenant of seizin, the measure of damages is the purchase money and interest. Harding v. Larkin, 41 Ill. 413; Wilson v. Peele, 78 Ind. 384.

In an action for breach of warranty in a deed, the measure of damages is the value of the land as agreed on at the time of the conveyance, with reasonable costs and expenses incurred in resisting eviction. Stebbins v. Wolf, 33 Kan. 765; Allis v. Hinninger, 25 Minn. 525.

The rule of damages is the value of the land and the legal costs and necessary expenses in defending the action of ejectment. Pitkin v. Leavitt, 13 Vt. 379.

There is no case that has gone the length of holding that
costs and charges of any other than the suit by which plaintiff
was evicted, could be recovered. Plaintiff can recover only
where the costs and attorney's fees are paid in defending the
ejectment suit by which the plaintiff was evicted. Harding
v. Larkin, 41 Ill. 421.

Mr. C. W. BROWN, for appellee.

No propositions of law were submitted in the lower court,
and no points were filed upon the motion for a new trial,
hence there can only be one or two questions in any event,
arising upon this record; in fact, counsel submit only three
grounds for a reversal. The first two are as to the sufficiency
of the evidence, and the third as to the right to recover costs
and attorney's fees in prosecuting the ejectment suit.

In answer to the first two it would be sufficient to say
that the same rule applies to the finding upon a trial before
the court as to the verdict of a jury, and that as much force
and effect will be given to it. Even if the evidence be con-
flicting, and the finding is not clearly against a preponderance,
the judgment will not be disturbed. Wood et al. v. Price,
46 Ill. 436; French v. Lowry, 19 Ill. 158; Ambs v. Honore,
et al., 24 Ill. 122; Eastman v. Brown, 32 Ill. 57; Field v. Chi.
& R. I. R. R. Co., 71 Ill. 461; Thomas v. Rutledge et al., 67
Ill. 123.

The third ground is, that the costs, including the attorney's
fees in the ejectment suit, can in no event be recovered. It
might be an objection to the consideration of this point at all
(since it goes simply to the question of whether the finding
is excessive or not), that it was neither raised in the lower
court, nor is it assigned for error here. C. & A. R. R. Co.
v. Glinney, 19 Ill. App. 640; Jones v. Jones, 71 Ill. 271.

But it is admitted that such costs may be recovered in
this action of covenant in some cases. That is, where the
covenantee is evicted from the premises by suit, wherein he is
defendant, and his covenantor has notice to defend. It re-
quires, therefore, no presentation of authorities on this ques-
tion, and it only remains to inquire whether a different rule

Walsh v. Dunn.

obtains where the grantee is plaintiff in the ejectment suit to test the title to the property, instead of defendant.   On principle there is no reason for the distinction.   In the ordinary case the vendee, getting possession, is evicted by the writ of ejectment, and if his warrantor has notice, is concluded by the judgment.   In the other case the vendee gets no possession, but seeks to do so by the same style of action, and gives his warrantor likewise notice; it is certain that the covenantor has equally as good an opportunity to establish his title in one case as the other, and the covenantee, who is prevented from getting possession, is as badly off as the purchaser, who, having got possession, is turned out.   Why is a judgment, then, against the covenantee, when he brings an action of ejectment and notifies his grantor, not as much evidence of an adverse, paramount title, as judgment where ejectment is brought against the vendee, and the covenantor there notified? The covenant of general warranty is to defend the title against all and every person lawfully claiming the whole or any part thereof, and is broken just as much where there is a constructive eviction, by failure to get possession through a proper action, as when turned out, having once been in possession.   The whole tenor of authorities, in suit on general covenant of warranty, is that there must be something tantamount to an actual eviction under a paramount title.   When a hostile right to the premises conveyed is asserted, then the grantee has two courses to pursue; he may yield to the hostile title without suit, or he may await an action from the adverse party, and notify his covenantor of that fact, and require him to defend.   By the latter course he insures perfect safety, for, if the hostile title be established, then it concludes his warrantor, and prevents any defense to a suit on the deed. In the former case, if he yields without suit and brings his action of covenant, he, at his peril, is bound to establish an eviction, either constructive or actual, under a paramount right.   It can be well seen that the adoption of the latter course might result in entire failure, losing not only the land, but his right to recover back the consideration, since it could not be determined that the outcome, before two different

courts or juries, with possibly different evidence, would be the same. See the following cases upon the covenant of full warranty: Beebe v. Swartout, 3 Gilm. 182; Jones v. Warner, 81 Ill. 346; Moore v. Bale, 17 Ill. 190; Claycomb v. Munger, 51 Ill. 376.

UPTON, P. J. This is an action in covenant, brought to recover for the loss of fourteen inches of land in width, north and south, and extending seventy-five feet east and west, in the south part of the north twenty-two feet of lot 3 in block 27, in the original town of Joliet, as surveyed, etc., and for costs sustained by appellee in prosecuting an action of ejectment, in the Circuit Court of Will County, of Dunn against Warnock.

The original town (now city) of Joliet was laid out by James B. Campbell, who was then the owner of the land, (1834,) and the surveys and plat thereof were made by one Woolsey in the same year, and the plat duly acknowledged and recorded; upon that plat is marked and numbered lot 3, in block 27, a portion of which is now in controversy. In 1873 the above mentioned lot 3 was subdivided into several smaller or sub-lots, and numbered from 1 to 6, inclusive, by one Mathieson, as surveyor, who made a map and plat of such subdivision in due form of law, which was also recorded. In this subdivision of lot 3 the north twenty-two feet thereof is identical with sub-lot 6 of that subdivision, and sub-lot 5 of said lot 3 is the twenty-two feet next south of the north twenty-two feet of lot 3.

Prior to 1885 the appellants were the owners of these two twenty-two foot lots; sub-lot 5 being then built upon, and sub-lot 6 being vacant.

In 1885 appellants conveyed sub-lot 5 to one James Warnock by deed with full covenants of seizin and warranty, who thenceforth occupied the same and the buildings thereon as a bakery. In March, 1887, appellants conveyed to the appellee by deed with full covenants sub-lot 6, etc., describing it as the north twenty-two feet of lot 3, etc. Soon after such purchase appellee, being desirous of building upon the lot so purchased

by her, caused a survey to be made of said land so purchased, and thereupon learned that the building of Warnock used as a bakery stood upon a portion of the twenty-two feet so purchased by her of the appellants.  Surveys were caused to be made by the several parties in interest, and it was determined that Warnock's building stood fourteen inches on sub-lot 6.

Warnock consulted an attorney, and being advised that he could hold the land so occupied by him, refused to remove his building therefrom, and the appellants, neglecting and refusing to make reparation or aid appellee in obtaining possession of that part of that lot (though fully informed of the fact), the appellee brought suit in ejectment in the Circuit Court of Will County against Warnock to recover this fourteen inches of land.  In that suit a trial was had which resulted in a verdict for Warnock.  Appellee then took a new trial, under the statute, and then served notice upon the appellants of the pendency of the action in ejectment, etc., in due form.  Appellants gave no heed thereto, and neglected and refused to assist or aid in the prosecution of the suit, and the cause was tried at the January term of the said Circuit Court, resulting in a judgment against appellee for costs; the principal defense to the action being the adverse possessions by Warnock and his grantors, barring a right of recovery thereto by either appellee or his grantor; and upon appellant's neglect and refusal to make restitution this suit was brought upon the covenants of appellant's deed, the declaration averring breaches of each and all the covenants, etc., with the expenses incurred in the action of ejectment, etc., to which the appellants pleaded performance, etc., and the cause was tried by the court, a jury being waived, resulting in a judgment in favor of the appellee for the sum of $169.60 and costs, from which judgment an appeal was taken to this court.  This judgment was for the costs and attorney's fees paid by appellee on the second trial of the ejectment suit.

No propositions of law were submitted in the trial court, and no *points* seem to have been filed upon the motion for a new trial in the court below.

Appellant in his contention before us presents three propositions or reasons for the reversal of the judgment, viz.:

First. That appellee is not entitled to recover, because the deed to appellee only calls for a strip or lot of land twenty-two feet in width and to that extent only the covenants in the deed run, and that this lot in fact extended fourteen inches into the alley north of and adjoining this lot, and that therefore the Warnock building (bakery) was not upon any part of this twenty-two feet conveyed, or on any part of sub-lot 6.

Second. If the appellee was entitled to recover in the court below she was limited in that recovery to the land actually occupied by Warnock and his grantors, covered by the bakery building, which strip was at most fourteen inches in width and extending back thirty feet in depth.

Third. In no event could appellee recover costs and attorney's fees expended in prosecuting the second trial by the ejectment suit in the Circuit Court, as was allowed to her in the court below.

1st. It might be a sufficient answer to the first proposition, to state that the same rule is applicable to the finding of facts upon a trial by the court, as applies to the findings by a jury, and if upon a conflict of testimony the finding in either case is not clearly and manifestly against the weight of the evidence the judgment will not be disturbed. Wood v. Price, 46 Ill. 436; Ambs v. Honore, 24 Ill. 122; French v. Lowry, 19 Ill. 158; Eastman v. Brown, 32 Ill. 57; Thomas v. Rutledge, 67 Ill. 213; Field v. Chicago & R. I. Ry. Co., 71 Ill. 461, and the cases therein cited. It is most emphatically stated in the above cited cases "that the same force and effect should be given to the findings of a judge, upon questions of fact submitted for trial before him, as to the verdict of a jury."

But the evidence in this case upon the point now under consideration scarcely rises to the dignity of a *conflict;* the fact that this bakery building of Warnock's stands upon the south fourteen inches of sub-lot 6, is almost absolutely demonstrated by Mathieson, the surveyor called by appellee, and by surveyor Brown, who was employed by those hostile in interest to the appellee. It is true that Cazwin, Stapleton and some other witnesses stated that the north boundaries of lot 6 in their opinion was different from that established and fixed by the

actual measurements and surveys of these acknowledged competent and skilled surveyors. But these witnesses also testified that they knew nothing about the corners of lot 6, or the boundaries thereof. Their whole judgment and expressed opinions were based upon the asserted fact that the alley on the north of lot 6 was twenty-inches wider than the calls for that alley on the plat, but even if that were true it might be that the lots on the other side of this alley might be short and require this overplus to fill the calls therefor on the plat. At all events the trial court was fully justified in their finding upon this point by the evidence.

2d. As to the second point in this contention regarding the land actually covered by the Warnock bakery building, the only testimony we find upon that point in the record before us is that of Warnock, the owner, and he testifies:

"I never measured it, but a mark was made on the front of the bakery building, and was said to be fourteen inches, and "it" (the building) runs back seventy-five feet."

But if there was no evidence upon that point in the court below, save the records of the judgments of the Circuit Court in the ejectment suit under the notice given appellants to prosecute that suit, would that not be *conclusive upon the appellants upon that point?* We think so, clearly. McConnell. v. Downs, 48 Ill. 272; Severin v. Eddy, 52 Ill. 191.

3d. It is contended that the costs, including attorney's fees in the second trial of the ejectment suit in the Circuit Court, can not be recovered in this suit in any event.

In Harding v. Larkin, 41 Ill. 420, it was held that a person holding land under a deed containing covenants to warrant and defend the title, when sued for the land, may defend the suit, and if unsuccessful, recover in covenant for taxable costs and attorney's fees necessarily paid in such defense, and this would seem to be the generally approved doctrine. Rawle on Covenants of Title and the authorities therein quoted.

In the case of Harding v. Larkin, *supra*, it is said: "A person in possession yields to what he supposes to be a paramount title at his peril. Holding a covenant from his grantor, that he will warrant and defend the title, it would

seem under the law that the covenantee may defend for him, and in fact in some cases must defend for him, and when he in good faith has done so, the taxable costs and attorney's fees paid in such defense may be reasonably considered and re- garded as a portion of the consideration paid for the title. It is paid to maintain what the grantor has affirmed by his covenant to be a perfect title. It would seem, therefore, that the covenantee should be entitled to recover the taxable costs and reasonable attorney's fees paid in defending the ejectment suit by which they were evicted."

So in the case at bar, by parity of reasoning, where the covenantee in good faith and after notice to his grantor (covenantor), under like covenants in the conveyance, seeks to obtain possession of that for which he had paid his money, relying upon such covenants, upon neglect and refusal of his grantor to put him in possession, he should have the right to institute proceedings to obtain such possession, and being cast in such suit for want of title in his grantor, should be allowed to recover taxable costs and reasonable attorney's fees incurred in prosecuting such suit. Otherwise the purchaser is at the mercy of the seller in cases where possession does not accom- pany the conveyance, or is compelled to obtain the possession at his own expense and costs, and that, too, in the very teeth of the covenants in the deed.

It is true this precise question has not been passed upon in this State to our knowledge, but we are not without au- thority sustaining the view we take.

In Pitkin v. Leavitt, 13 Vt. 379, it was held by an able court after a careful consideration, that an action on a cov- enant of warranty may be sustained where the grantee had brought an action in ejectment to recover possession of land sold, and failed for want of title in his grantor, and that the rule of damages of the covenant of warranty is not only the value of the land, but the legal costs and necessary expenses, including attorney's fees, in such action of ejectment, and that, too, when no notice was given the grantor of the pendency of the proceedings in ejectment, and without demand of posses- sion of the covenantor.

It was further held in that case that when an action of eject-ment is brought against one in possession under a deed with covenants of warranty and he gives notice to a grantor, and a recovery is had against him, the record of such recovery is evidence that he was evicted by one having an older and better title unless it is shown that the recovery was had in consequence of a title derived by the act or negligence of the grantee subsequent to the date of the deed, and of this the burden is upon the covenantor.

*Prima facie* then, according to this, in the case at bar the record in the ejectment suit was equivalant to an eviction. See also Brower v. Taylor, 13 Vt. 637.

As to the legal costs and expenses in the action of eject-ment the case of Smith v. Compton, 3 Barn. & Adol. 407, is very decisive authority, not only that there may be a recov-ery on the covenant by warranty when no notice had been given by the former suit in ejectment, but also that the recovery should be for the necessary costs and expenses in that suit. And in our judgment the trial court committed no error in so holding. Finding no error in the judgment of the County Court, the judgment is affirmed.

*Judgment affirmed.*