438

Indemnity Insurance Company of North America, Appellant, v. Prairie State Bank, and Fred W. Graham, Jr. et al., Trading as Graham and Company, Appellees.

Gen. No. 44,594.

Opinion filed February 9, 1949. Released for publication March 9, 1949.

DENT, WEICHELT & HAMPTON, of Chicago, for appellant.

Lord, Bissell & Kadyk, of Chicago, for certain appellee; Gordon R. Close and Leonard F. Martin, both of Chicago, of counsel.

Wilson & McIlvaine, of Chicago, for certain other appellee; J. F. Dammann and F. A. Reichelderfer, both of Chicago, of counsel.

Mr. Justice Kiley delivered the opinion of the court.

This is an action to recover $5,661.74 attorney's fees, expenses and costs incurred by plaintiff in performing its obligation to defend a suit against its indemnitee, the American Telephone and Telegraph Company, hereinafter referred to as A. T. & T. The instant action is based on the alleged liability of defendants arising out of a signature "guaranteed" by them upon an irrevocable stock power. The court sustained defendants' motions to dismiss and on June 8, 1948, entered judgment against plaintiff. Plaintiff has appealed.

Defendants' motions admitted the facts well pleaded. We shall recite those facts and others we deem relevant. Plaintiff sued as subrogee and assignee of claims of A. T. & T. against defendants. On June 12, 1936, A. T. & T. issued 100 shares of stock in the name of Charlotte Nolan at the direction of her father John Nolan. On July 7, 1936, John Nolan made a loan from defendant bank. As collateral he delivered to the bank the certificate for 100 shares of A. T. & T. and an irrevocable stock power signed in the name of Charlotte Nolan. September 2, 1936, he ordered the bank to sell the stock. The bank endorsed the stock power, "Signature Guaranteed; Prairie State Bank, . . ." and forwarded the certificate and power to Graham & Co., defendant, in New York City for sale. Graham & Co. on September 3rd endorsed the stock power, "We hereby guarantee the above sig-

nature to be that of the person named on the face of the certificate'' and ''Signature Guaranteed—Graham & Co.'' The stock was bought by Graham & Co. and its check mailed to the bank. Nolan's loan was paid with part of the proceeds and the balance remitted to him. Graham & Co. forwarded the certificate and power to A. T. & T. It made the transfer in accordance with the same and issued a new certificate for 100 shares to Graham & Co.

John Nolan died in July 1937. In December 1938, his daughter Charlotte sued A. T. & T. in equity to compel the issuance to her of a certificate for 100 shares of its stock. She alleged that she was the owner of the certificate pledged to the bank by her father and that the signature on the stock power was a forgery. The Bank and Graham & Co. rejected the tender of the defense of that suit. Plaintiff under its bond of indemnity to A. T. & T. defended. The chancellor decreed in favor of Charlotte Nolan on findings that she was the owner and that her signature was a forgery. The bank and Graham & Co. accepted tender of the prosecution of the appeal from that decree. This court reversed the decree and remanded with directions to dismiss for want of equity. (326 Ill. App. 328.) It decided that the finding of forgery was against the manifest weight of the evidence. It is conceded now that the signature on the stock power is genuine.

The question is whether the defendants indemnified A. T. & T. so as to become liable to plaintiff, as its assignee, for attorneys' fees, etc. expended in defending the Charlotte Nolan suit where the signature was not shown to be false and is now admitted to be genuine. Plaintiff's position is that by their undertaking, expressed in the stock power, defendants became indemnitors. Defendants concede only that had the signature been false they would be liable for loss suf-

fered because of reliance upon the "guaranteed" genuineness of the signature.

We need not attempt to distinguish and define the contracts of guaranty, indemnity and warranty. It is enough to say that the terms are used synonymously and interchangeably (24 Am. Juris. pp. 875–883) and one is used to describe another. *Metropolitan Coal Co. v. Howard,* 155 Fed. (2d) 780. We need only decide what defendants intended and undertook to do by the words they used. The word "guaranteed" has more than one meaning. 38 C. J. S. pp. 1134, 1135. The defendants did not exchange promises with each other or with A. T. & T. Presumably the three were satisfied with the meaning which the word conveyed. We think the word in the instant transaction meant only that defendants assured, whoever chose to depend upon the assurance in connection with the stock power, that the signature was genuine. We think A. T. & T. must be considered as having made the transfer in the light of that meaning. Plaintiff stands in the shoes of A. T. & T. The liability of defendants was limited to the loss suffered by anyone acting, to his detriment, upon the assurance in the event the signature was false. Since the signature on the stock power here is admittedly genuine, there is no liability.

There is no express undertaking to pay the expenses, etc. claimed. We cannot agree with plaintiff that since the words used do not exclude the idea of indemnity, the idea is included. Plaintiff has not shown and no cases cited convince us that any implied obligation arose necessarily from the words or from any situation created by the words. *Domeyer v. O'Connell,* 364 Ill. 467. Plaintiff admits it has found no cases in support of its position where the signature was not a forgery. Defendants argue with authority (*First Nat. Bank of Greenfield Bank v. Marietta & C.*

R. Co., 20 *Ohio State Rep.* 259; *Dale v. Grant,* 34 N. J. L. 142), that this is strong evidence of the general understanding of the legal profession on the subject.

The only case close on the facts is *Boston & Albany Railroad v. Richardson,* 135 Mass. 473, where a transfer was made on a forged endorsement. The court held the transfer agents' expenses in a suit by rightful owner for a new certificate were part of the damage. The distinction between that case and this is obvious. Defendants admit that had the signature been proved false in the instant case, they would be liable to reimburse plaintiff for any loss suffered through making the transfer.

Cases where there were express indemnities against all loss, etc. by reason of the bond (*Second Nat. Bank v. U. S. Fidelity & Guaranty Co.,* 266 Fed. 489) and against any loss, etc. in consequence of a bond. (*Fidelity & Casualty Co. v. Johnson,* 190 Wis. 199; and *Hartford Accident & Indemnity Co. v. Dahl,* 202 Minn. 410) are not helpful in the absence of a showing of like indemnities in the instant case. The same is true where the law gives rise to an implicit indemnity (*Grimes v. Taylor,* 93 Ill. App. 494); likewise in cases involving express warranties of title in deeds, (*Walsh v. Dunn,* 34 Ill. App. 146; *Harding v. Larkin,* 41 Ill. 413; *Rook v. Rook,* 111 Ill. App. 398; *Swett v. Patrick,* 12 Maine 2). Plaintiff argues from analogy of these last cited cases. In them and others presented under a note commencing on page 731 in 105 A. L. R., there was either an unsuccessful defense or suit because of a paramount title or a successful defense or suit where there was a legal hostile claim which grantees defeated on equitable grounds. The general rule is stated in 14 Am. Juris. p. 532; 21 C. J. S. 976; and *National Bank v. Jack,* 334 Ill. App. 186. Insurance cases where there are express undertakings to defend, even if the suits are groundless (*Socony-Vacuum Oil Co. v. Continental Casualty Co.* (Ohio App.), 67 N. E. (2d) 836;

*Socony-Vacuum Oil Co. v. Continental Casualty Co.,* 144 Ohio St. 382, 59 N. E. (2d) 199; *Interstate Oil Co. v. Equity Mut. Ins. Co.* (Mo. App.), 183 S. W. (2d) 328; *Leonard v. Maryland Casualty Co.,* 158 Kan. 263; *American Fidelity Co. v. Deerfield Valley Grain Co.,* 43 F. Supp. 841), are not helpful. The language of Mr. Justice HAND in *Metropolitan Coal Co. v. Howard,* 155 Fed. (2d) 780 does not aid plaintiff because here the fact relied on by A. T. & T. and assured by defendants, was true. We need not consider cases where attorneys' fees were allowed as part of damages covered by indemnities. (42 C. J. S. 585; *Sears v. Nahant,* 215 Mass. 234; *Rothschild Co. v. Moore* (Tex. Civ. App.), 166 S. W. (2d) 744.) Defendants refer us to insurance cases where express indemnities were given against claims for which liability was imposed by law (*Cornell v. Travelers' Ins. Co.,* 175 N. Y. 239; *Henderson Lighting & Power Co. v. Maryland Casualty Co.,* 153 N. C. 275) and where the assured were denied recovery of expenses for the defense of claims not covered by the policy.

In the insurance cases cited by plaintiff it was stated that liability to defend arose when the suits were commenced stating causes of action which come within the provisions of the policy. In one case it was said that liability need not await final outcome. *Socony-Vacuum Oil Co. v. Continental Casualty Co.,* 144 Ohio St. 382, 59 N. E. (2d) 199. In those cases, however, the undertakings were to defend claims even though groundless. They are not authority for plaintiff's claim to the expense incurred before the appeal in the Charlotte Nolan case.

█ There is no merit in plaintiff's contention that by accepting prosecution of the appeal in the Charlotte Nolan suit the defendants are estopped to deny liability for plaintiff's expense. In *Meyer v. Blakemore,* 54 Miss. 570 there was a breach of the contract and defendant benefited through plaintiff's efforts. De-

fendants here, by prosecuting the appeal with success, satisfied their undertaking. *Lawrence v. Wendnagel,* 200 Ill. App. 32. A. T. & T. depended upon the bank and Graham & Co. Graham & Co. depended upon the bank. The bank depended upon Charlotte Nolan's father. Fortunately, for defendants, the signature turned out to be genuine. We think they had the right to reject the tendered defense and await the event which established that fact. *Cornell v. Travelers' Ins. Co.,* 175 N. Y. 239. Unfortunately for plaintiff, A. T. & T. depended upon the guaranties for protection which they were not intended to and did not give.

The only sure way a corporation in the position of A. T. & T. has of protecting itself is to require the stockholder, transferrer, to appear personally and the next best protection is the guarantee. Christy, ''The Transfer of Stock,'' 1929, Sec. 44. Defendants say that to construe the guarantees in the manner sought by plaintiff would burden business of this kind to the extent that the second best method referred to would be eliminated. We agree. We conclude that since the signature was not shown to be false, there is no liability on the part of the defendants to reimburse plaintiff as assignee and subrogee of American Telephone and Telegraph Company for the expense of defending the Charlotte Nolan suit.

For the reasons given the judgment is affirmed.

*Affirmed.*

BURKE, P. J., and LEWE, J., concur.