101 So.2d 603 (1958)
Kenneth Kaspar EULETTE, a/k/a Kaspar Eulette, Appellant,
v.
MERRILL LYNCH, PIERCE, FENNER AND BEANE, a partnership doing business in the State of Florida, Appellee.
No. 57-344.
District Court of Appeal of Florida. Third District.
March 25, 1958.
Rehearing Denied April 16, 1958.
*604 Ward & Ward, and Dunn & Hickey, Miami, for appellant.
Worley, Gautier & Dawes, Miami, for appellee.
HORTON, Judge.
In 1932 and 1936, Otto Kaspar purchased stocks in various industrial corporations and caused the certificates representing said shares to be placed in the name of his grandson, Kaspar Eulette. These certificates represented 83 shares of stock. An additional certificate representing 250 shares of Autopoint Company stock was purchased by him in the following name: "Otto Kaspar, Trustee for Kaspar Eulette". At the time the various stocks were purchased, Kaspar Eulette was a minor. In a proceeding in the Circuit Court for Dade County, Florida, in 1947, Marion Eulette, the mother and next friend of Kaspar Eulette, a minor, obtained a declaratory decree adjudicating that the certificate representing 250 shares of stock of Autopoint Company purchased by Otto Kaspar, Trustee for Kaspar Eulette, was in truth and in fact the property of Kaspar Eulette and appointing her as successor trustee in the place and stead of Otto Kaspar who had passed away in 1944.
During his lifetime, Otto Kaspar apparently held physical possession of the stock, received the dividends therefrom and to all intents and purposes exercised exclusive dominion and control over said stocks. Kaspar Eulette reached his majority in October, 1948. In addition to the knowledge imparted to him by his mother when she obtained the declaratory decree in 1947, he had been advised by his grandfather that he, Otto Kaspar, held certain stocks in the name of Kaspar Eulette. This latter disclosure apparently was made when the grandson interrogated his grandfather regarding certain letters that came to the home addressed to Kaspar Eulette. After the death of Otto Kaspar, the stock apparently was either in the physical possession of the wife of Otto Kaspar and/or the mother of Kaspar Eulette, and the dividends from these stocks during that time apparently were used by Otto Kaspar's wife or the mother of Kaspar Eulette. There was no probate of the estate of Otto Kaspar.
The bill of complaint brought by Kaspar Eulette alleges in substance that he was the owner of the aforesaid stock, and that on October 10, 1949 and January 14, 1952, the defendant, a stock brokerage firm, without his knowledge or consent, sold these stocks; that the signatures appearing on the endorsements of the stock certificates were forgeries and that no one was authorized to sign his name. It is further alleged that checks in the sums of $6,014.94 and $5,749.22 respectively were issued in the name of Kaspar Eulette by the defendant-brokerage firm but that he, Kaspar Eulette, had never received the proceeds of said checks or any part thereof and that the signatures appearing *605 thereon as his endorsement were in fact forgeries. It was also charged that in the negotiation of the stocks, the brokerage firm guaranteed the signatures of Kaspar Eulette appearing on the endorsements of the stock certificates as being genuine when in fact they were forgeries. The complaint sought an accounting of the transactions involving the sale of the stocks and a decree that Kaspar Eulette should be awarded the value of the stocks, including interest, as a result of the aforesaid actions of the defendant-brokerage firm.
The defendant denied in substance the material allegations of the complaint and affirmatively alleged that Kaspar Eulette was not the legal owner of the stock certificates in question or that he had ever acquired ownership or possession of said certificates. The appellee admitted the delivery of the certificates of stock to it; that instructions to sell were given and that the stocks were sold and the proceeds transmitted as directed by the individuals delivering the stocks to it. The affirmative defenses of the statute of limitations and laches were also urged by the defendant in its answer.
The cause was referred to a special master in chancery who heard the witnesses, received the evidence submitted by the respective parties and filed a report in which, inter alia, he recommended that the court require the defendant-broker to pay Eulette the sum of $25,780.25 which represented the full value of the shares plus dividends and interest. Exceptions were filed to the master's report which were sustained by the chancellor, who thereupon entered a final decree from which this appeal was taken. The lower court by its decree found the equities to be with the appellee, as the appellant had failed to establish ownership of the stock, and further, that he had been guilty of laches and thus dismissed the complaint with prejudice.
At the time of the institution of this suit, both Mrs. Mayme Kaspar, the appellant's grandmother, and Marion Eulette, the appellant's mother, had died. There was no probate of the estate of Mrs. Mayme Kaspar and the time for the filing of creditors' claims in the estate of Marion Eulette had expired.
Both parties concede that the signatures appearing on the various stock certificates, purporting to be that of the appellant, were forgeries; however, it is not clear by whom the forgeries were committed. It is undisputed that appellant's mother, in 1952, brought the stock certificate representing 250 shares of stock in Autopoint Company to an agent of the appellee to sell. The stock certificate at the time of its delivery to the appellee bore the forged signature of the appellant. It also appears that the appellee had represented members of appellant's family in past stock transactions, and thus relied upon the assurances of appellant's mother in guaranteeing the signature of her son. After delivery, the stocks were negotiated in due course of trade and the proceeds directed in the name of the appellant.
The establishment of the ownership of the 83 shares of stock by gift inter vivos is one of the controlling questions to be resolved on appeal. The trial judge, however, by his decree considered the Autopoint stock in the same category with the 83 shares, notwithstanding a prior adjudication of title in appellant by the court in 1947. That portion of the decree will be discussed later in this opinion. To establish ownership by gift inter vivos, the burden is upon the appellant to make a clear showing of a donative intent, delivery of possession and surrender of dominion and control of the subject of the gift. We concur with the chancellor in his conclusions that the evidence fails to support a finding of intention on the part of Otto Kaspar to make a complete and irrevocable surrender of dominion and control of the stock certificates sufficient to constitute a completed gift. Further, the essential requirement *606 of delivery was not shown as the appellant not only did not possess the certificates, but had never seen them. Webster v. St. Petersburg Federal Savings & Loan Ass'n, 155 Fla. 412, 20 So.2d 400; Barbash v. Barbash, Fla. 1952, 58 So.2d 168. See also the Uniform Stock Transfer Act, Sec. 614.03, Fla. Stat., F.S.A., as to the requirement of delivery. Lacking the essential requirements of a valid gift inter vivos, the basis for the establishment of ownership and the appellant's recovery fails.
The Autopoint stock poses a different question, notwithstanding the fact that the court below by its decree concluded that appellant had also failed to prove ownership of this stock. We concur with the conclusion reached by the court below in denying recovery upon the Autopoint stock but feel that such conclusion was based upon the application of erroneous principles of law. The theory of appellant's case was that the appellee, as broker, had sold stock belonging to him and guaranteed his signature thereon when, in fact, the signatures of appellant were forgeries. The appellant did not charge the appellee with knowledge that the purported signatures were forgeries, but that the appellee by guaranteeing the forged signatures aided and abetted, though unintentionally, the commission of the forgeries. Thus, it can be seen that the ultimate question to be answered is: Can an owner of stock certificates hold a stock broker liable in conversion for the sale of stock upon the broker's guarantee of the owner's forged signature thereon when the circumstances surrounding the delivery of the stock certificates are not such as to arouse the broker's suspicions that the delivery was in breach of a duty or trust? We consider first whether or not the appellee-broker, under the circumstances set forth in this record, could be held liable in conversion. We do not think so. The appellee's only duty, since it is conceded that it was not a party to the forgeries or had any knowledge thereof, was to convert the stock into cash and remit the proceeds as directed, in this instance to the appellant. The conversion, if any, was committed by the person delivering the certificate bearing the appellant's forged signature with assurances to the appellee-broker that the signature was genuine in order to obtain the broker's guarantee necessary to effect a transfer and sale of the stock. The initial forgery, committed by a person or persons unidentified, was the proximate cause of the loss and not the guarantee of the forged signature by the appellee. Through confidence reposed, either express or implied, the appellant had allowed the stock to remain in the possession of his grandmother and/or mother and through this acquiescence on his part, made the perpetration of this fraud possible. In other words, it was his agent or agents who committed the first fraud, to-wit: the forgery and delivery of the certificate that set off a chain of circumstances which ultimately resulted in his loss. As between two innocent parties who must suffer, the loss should fall on the one whose conduct first put into motion the circumstances which occasioned the loss. Niccolls v. Jennings, Fla. 1957, 92 So.2d 829. See also United States Gypsum Co. v. Faroll, 296 Ill. App. 47, 15 N.E.2d 888, and cases cited therein. The guarantee of the forged signature of the appellant on the stock certificate could not, in our opinion, afford the appellant any basis for recovery. The guarantee would run only to those persons who, subsequent to the guarantee, dealt with the stock in reliance upon the guarantee. There has been no showing that the appellant acted to his detriment, or, for that matter, acted at all, in reliance upon the appellee's guarantee. See Indemnity Insurance Co. of North America v. Prairie State Bank, 336 Ill. App. 438, 84 N.E.2d 338.
We recognize that a different rule might apply where stock certificates are negotiated which have been stolen or the owner has been otherwise unlawfully deprived of possession. In the case at bar, the mother appears to have been in lawful custody of *607 the Autopoint stock certificate, and in the absence of any showing of collusion, bad faith or notice to or on the part of the appellee, it would not be liable to appellant.
The decree of the lower court is affirmed.
CARROLL, CHAS., C.J., concurs.
DREW, E. HARRIS, Associate Judge, agrees to conclusion that judgment be affirmed.