Dorothy H. LOVE

v.

The PENNSYLVANIA RAILROAD COMPANY

v.

The FIRST NATIONAL BANK OF ALTOONA, Central Trust Company

and

Charles M. Kurtz, Executor of the Estate of Carl Weiss, Deceased.

Civ. A. No. 23653.

United States District Court
E. D. Pennsylvania.

Dec. 28, 1961.

Krusen, Evans & Byrne, Albert R. Beal, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Geo. M. Brodhead, Peter C. Paul, Philadelphia, Pa., for First Nat. Bank of Altoona and Central Trust Co., additional defendants.

KRAFT, District Judge.

Plaintiff seeks damages against the Pennsylvania Railroad Company ("Railroad"), alleging that plaintiff, prior to the death of her father, Carl Weiss, was the owner jointly with him of 220 shares of the capital stock of the Railroad, with the right of survivorship, and that in September, 1955, the Railroad transferred such shares from the joint names of plaintiff and her father to the sole name of her father, pursuant to an assignment on which plaintiff's name was wrongfully and fraudulently forged.

The Railroad brought in as third-party defendants the First National Bank of Altoona and the Central Trust Company, who had guaranteed the purported signature of plaintiff and the signature of her father on a stock assignment and on a dividend request.

Presently before us is plaintiff's motion for leave to amend her complaint so as to assert a claim against the third-party defendants based solely on their respective signature guarantees.

The third-party defendants oppose the motion on the ground that the facts alleged in plaintiff's proposed amended complaint do not constitute a legal claim against either of them. We are persuaded that the third-party defendants' contention is sound, and that plaintiff's motion must be dismissed.

■ Plaintiff relies in part upon § 8–312 of the Uniform Commercial Code, 12A P.S. § 8–312, as that section provided at the time of the guarantee:

"§ 8–312. Effect of Guaranteeing Signature or Indorsement

"(1) Any person guaranteeing a signature as being that of an indorser of a security warrants to any person taking or dealing with the security in reliance on the guaranteed signature that

"(a) the signature is not forged; and

"(b) the signer is the holder or has authority to sign in the name of the holder; and

"(c) the signer has legal capacity to sign.

"But the guarantor does not warrant the rightfulness of the particular transfer.

"(2) * * *

"(3) The guarantor of a signature or an indorsement shall be liable to any person, including an issuer who registers a transfer in reliance on the guarantee, for any loss resulting from breach of the warranties stated in this section but no issuer may require an indorsement guarantee as a condition to registration or transfer of a security."

Plaintiff emphasizes the phrase "to any person" in subsection (3), and contends that these words establish the third-party defendants' liability to her for her loss resulting from the breach of the warranty that "the signature is not forged." While a literal reading of the provision lends some support to the plaintiff's contention, we think it clear that its language must be read in conjunction with that contained in subsection (1). So read, the signature guarantor's liability "to any person" must be deemed coextensive merely with his warranty, which runs only "to any person taking or dealing with the security in reliance on the guaranteed signature." That this was the real meaning of subsection (3) seems apparent from the fact that the subsection was amended in 1959 to express, in clear and unequivocal language, that precise meaning. Since, under the averments of the complaint, plaintiff did not take or deal with the security in reliance on the guaranteed signature, the third-party defendants' warranty did not extend to her, and they are not liable to her for any loss resulting from its breach.

Plaintiff further contends that, under the common law, a signature guarantee is a general guarantee, and "inures to the benefit of anyone injured by the forged signature," citing 24 Am.Jur., Guaranty, § 15. The language relied upon does not bear out quite so broad a statement. "What is termed a 'general' guaranty is addressed to persons generally and may be acted upon and enforced by anyone *to whom it is presented*." (Emphasis supplied.) Since the signature guaranty was never presented to the plaintiff, she could neither act upon it nor enforce it.

The industry of counsel and our own research have disclosed a singular dearth of authority on the precise question. However, the few cases in point establish the principle that the guarantee of a signature does not run to the owner of the security unless the signature guarantor had actual knowledge of the impropriety of the transaction. It was so held in Eulette v. Merrill, Lynch, Pierce, Fenner and Beane, 101 So.2d 603, 606 (Fla. App.1958):

"The guarantee of the forged signature of the appellant [owner] on the stock certificate could not, in our opinion, afford the appellant any basis for recovery. The guarantee would run only to those persons who, subsequent to the guarantee, dealt with the stock in reliance upon the guarantee. There has been no showing that the appellant acted to his detriment, or, for that matter, acted at all, in reliance upon the appellee's guarantee. See Indemnity Insurance Co. of North America v. Prairie State Bank, 336 Ill.App. 438, 84 N.E.2d 338."

It is the uniform rule in Pennsylvania that a person making a general guarantee or warranty is liable only to those parties who have acted in reliance thereon. The Northumberland County Bank v. Eyer, 58 Pa. 97 (1868); Freeman v. Pennsylvania R. R. Co., 173 Pa. 274, 33 A. 1034 (1896); Barratt v. Greenfield, 137 Pa.Super. 310, 9 A.2d 188 (1939).

We conclude, therefore, that the averments of the proposed amended complaint fail to state a legal claim against either third-party defendant, and the motion for leave to amend must be denied.