ON MOTION FOR REHEARING EN BANC
TORPY, J.
We grant the motion for rehearing en banc, recede from the panel opinion, and substitute this opinion in its place.[1]
The issue we address in this wrongful death lawsuit is whether Robert Christensen (“Appellee”) is vicariously liable for damages arising from an automobile collision caused by his now ex-wife, Mary Gregory Taylor-Christensen (“Ms.Taylor-Christensen”), who was operating a car while under the influence of alcohol when she struck and killed Appellant’s husband. The car that Ms. Taylor-Christensen was driving was titled in both her and Appel-lee’s names as co-owners. Because we conclude, as a matter of law, that Appellee had an identifiable property interest in the car at the time of the collision, we reverse the lower court’s order that denied Appellant’s motion for directed verdict, and remand the case with instructions to enter judgment against Appellee in accordance with the damage verdict — as might be modified after due consideration of Appel-lee’s fifth affirmative defense.[2]
Appellee testified that he separated from Ms. Taylor-Christensen in April 1999, and Ms. Taylor-Christensen relocated to another county. In April 2003, after the conclusion of the court proceedings for the dissolution of their marriage, but before the final judgment was entered, Ap-pellee attempted to reconcile with Ms. Taylor-Christensen and went to visit her. Ms. Taylor-Christensen told him that she needed a second car because the vehicle she had was unsuitable for transporting her grandchildren. After shopping together, Appellee purchased the car that Ms. Taylor-Christensen was operating at the time of the fatal collision.
Appellee and Ms. Taylor-Christensen signed numerous documents in connection with the purchase of the car identifying themselves as “purchaser[s]” or “co-own *138 er[s]” or both. They signed a purchase agreement that identified each as “buyer” and “purchaser.” They signed a HSMV 82994 form (required to obtain title) as “Buyer[s].” Under penalty of perjury, they signed an application for title wherein they designated themselves at the top of the page as “co-owner[s],” and each of their signatures appeared over the typewritten designation “APPLICANT (CO-OWNER).” The application included a sworn attestation to the correctness of the information. Both Appellee and Ms. Taylor-Christensen produced their driver’s licenses and provided their social security numbers and birth dates for recordation in the transaction paperwork. The purchase transaction took a considerable period of time to complete. Appellee described the process as “tak[ing] longer to buy a vehicle than anything else in [one’s] life.” When asked about the documents, Appellee acknowledged that the title to the car was issued to Ms. Taylor-Christensen “or” Ap-pellee, in accordance with the application, but he claimed that his intention in signing the paperwork was to make a “gift” , of the car to his “wife.” According to Appellee,
the salesman filled out the paperwork, gave me the paperwork, and I signed it. My intention was to buy a gift for my wife so that she could drive a car and, of course, that was my interest, was to buy her a car for that purpose. And so I signed the documents there so that I could purchase that car for her.
(Emphasis added).
According to Appellee, he saw the car only twice after the purchase — the day after the purchase when he drove it to a car wash and one other time in the summer of 2003, during a second and last attempt at reconciliation. The fatal collision occurred on February 21, 2005.
After the court denied Appellant’s motion for directed verdict on Appellee’s liability, the jury returned a special verdict finding that Appellee was not the owner of the car at the time of the collision. Appellant challenges that ruling, arguing that, as a matter of law, Appellee was the owner of the vehicle. We agree and reverse.
The dangerous instrumentality doctrine was adopted in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). Its evolution has been the product of state and federal legislation,[3] as well as judicial construction. The Florida Legislature, in the Financial Responsibility Law, imposed limited statutory liability on “owners” who permit the use of their vehicles:
The owner who is a natural person and loans a motor vehicle to any permissive user shall be liable for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage.
§ 324.021(9)(b)3., Fla. Stat. (1999)[4] (emphasis added). Section 324.021(9)(a), Florida Statutes (2005), defines “owner” as the “person who holds the legal title of a motor vehicle.” (Emphasis added). Two of the so-called exceptions to title holder liability addressed by the courts have also been addressed by statute in the Florida Uniform Traffic Control Law. See § 316.003(26), Fla. Stat. (2005) (conditional sales exception — “owner” defined as one who holds legal title or conditional sales vendee); § 319.22(2), Fla. Stat. (2005) (incomplete transfer — transferor not liable for incomplete transfer if certain formalities are honored).
If the answer to this case involved the application of the statutory scheme, with *139 out more, it would be easy. Because Ap-pellee never transferred title of the vehicle in accordance with section 319.22(2), Florida Statutes (2005), and was not a conditional sale vendor as set forth in section 316.003(26), Florida Statutes (2005),[5] he remained a co-owner of the car by virtue of holding legal title at the time of the collision. Thus, he was legally liable for the acts of his co-owner while she was operating the car, at least to the statutory limits set forth at section 324.021(9)(b)3. However, in Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla.1955), the supreme court recognized an “extremely limited” exception that allows the title holder to “escape” liability if the title holder consummates a “common law sale,” even if the sale does not meet the formalities of the statutory scheme. See Aurbach v. Gallina, 753 So.2d 60, 63-64 (Fla.2000) (characterizing holding in Palmer as “extremely limited” exception under which titled owner may “escape” liability).[6]
In Palmer, the title holder, a used car dealer, sold a car to Mr. Hughes under a conditional sales contract. 81 So.2d at 635. The contract and other papers were signed, indicating that the buyer had purchased the car, a down payment had been paid, and the car had been delivered to the buyer. The buyer subsequently caused a collision while driving the car. Id. The used car dealer argued that it was not the beneficial owner of the vehicle because it had sold its interest to Mr. Hughes, even though it had not attended to statutory formalities for transfer and avoidance of transferor liability.[7] Id. at 636. Our high court agreed. It concluded that, although a transfer of ownership using the formalities contained in section 319.22, would, as the statute states, terminate the transfer- or’s liability, the statutory method of transfer was not intended to be exclusive. A transferor’s liability could also terminate upon a completed “common law sale.” Id. Our high court concluded:
We think these facts supported the verdict rendered. Before Hughes drove the car out of the Evans lot, the definite intention existed on the part of Hughes and the Evans representative to make immediate transfer of the beneficial ownership of the vehicle to Hughes, and nothing appears to suggest a contrary intention.
Id. (emphasis added).
Appellee heavily relies on Palmer and its progeny, urging that this is a case *140 where the issue of beneficial ownership was properly placed before the jury because it was a question of fact whether Appellee had divested himself of his ownership interest in the vehicle by “gift.” Assuming that the “extremely limited” exception in Palmer — a case involving a well-documented exchange between unrelated parties with no contradictory evidence— may be extended to this situation, to prevail on this argument, Appellee had the burden to present material evidence to support his theory that he gifted all of his interest in the vehicle to Ms. Taylor-Christensen, rather than a mere co-ownership interest. See Palmer, 81 So.2d at 636-37 (emphasizing lack of evidence “to suggest a contrary intention”).
To make a valid gift, three elements must be shown: donative intent, delivery of possession, and an intent by the donor to divest himself of all dominion and control. Reiner v. Reiner, 400 So.2d 1292, 1293 (Fla. 4th DCA 1981); Sihler v. Sihler, 376 So.2d 941, 942 (Fla. 2d DCA 1979); Eulette v. Lynch, 101 So.2d 603 (Fla. 3d DCA 1958). In determining the donor’s intent, the evidentiary focus must be on the donor’s words when making the purported gift. Canova v. Fla. Nat’l Bank of Jacksonville, 60 So.2d 627, 628 (Fla.1952); Winner v. Winner, 370 So.2d 845, 846-47 (Fla. 3d DCA 1979). Here, the only evidence of the words Appellee used to manifest an intent to make a gift was in the documents he signed when he acquired the car from the dealer. The complete void in Appellee’s proof, however, is that the documents evince only an intent to gift a co-ownership in the vehicle, at most. Appel-lee expressly and purposefully retained an ownership interest for himself, defeating any contention that he intended to divest himself of all interest in the vehicle.
What Appellee has really endeavored to do here is contradict the documents with after-the-fact evidence of a subjective intent to do what the unambiguous documents do not do. As he stated, “My intention was to buy a gift for my wife so that she could drive a car and, of course, that was my interest, was to buy her a car for that purpose. And so I signed the documents there so that I could purchase that car for her.” We long ago held that this type of evidence is “legally immaterial” to defeat vicarious liability by a title holder of a vehicle. In Johnson v. Deangelo, 448 So.2d 581, 582 (Fla. 5th DCA 1984), we succinctly stated the applicable law on this issue:
Mary S. Johnson’s name, together with that of her husband, Willie D. Johnson, Jr., was on the title certificate of the motor vehicle operated by their son, Gary Evan Johnson, at the time of the accident that resulted in a wrongful death. Mrs. Johnson intentionally caused her name to be placed on the title certificate, it did not happen by accident or without her knowledge and consent, nor did she hold her formal ownership interest in the vehicle as a mere security device or because she had made a good faith but ineffectual attempt or effort to transfer her title interest. Her subjective intent or reason or motive in causing her name to be placed on the title certificate was legally immaterial and, accordingly, her testimony was insufficient as a matter of law to rebut the legal presumption arising from the motor vehicle title certificate itself and insufficient to avoid the legal consequences of that fact.
(Emphasis added). The reason for this rule of law is that vicarious liability of the type here flows from an “identifiable property interest” in a vehicle. Aurbach, 753 So.2d at 62. Property interests are established by contract, and contracts are formed by objective acts, not subjective *141 beliefs. When a written document addresses the subject matter of the contract, it cannot be contradicted by evidence of subjective intent. Gendzier v. Bielecki 97 So.2d 604, 608 (Fla.1957). “[A] party who signs a document ... is bound by its terms in the absence of coercion, duress, fraud in the inducement or some other independent ground justifying rescission.” Hale v. State, 838 So.2d 1186, 1187 (Fla. 5th DCA 2008). These legal tenets are equally applicable whether the purported property interest is based on an alleged sale or an alleged gift.
Here, Appellee executed document after document identifying himself as a co-purchaser and co-owner. By his own admission, the transaction took a significant period of time. The voluminous nature of the documents bear that out. He was required to furnish his driver’s license and social security information. He signed his name five times on different documents, all of which identified him as purchaser, co-purchaser, or co-owner. He signed a sworn application for title and registration, attesting to his ownership interest, instructing the government to issue the title and registration documents in his name as co-owner and to send them to Ms. Taylor-Christensen’s address.[8] He never claimed that the salesman incorrectly filled out the documents or that he did not read and understand them. They were simple and unambiguous. In any other factual context — a title dispute between the parties, an attempt by a creditor to levy on Appel-lee’s interest, probate, divorce, survivor-ship, etc. — we would hold Appellee to what he signed because to do otherwise renders the documents meaningless. Appellee has not advanced any compelling reason why we should make an exception here.
Giving effect to the documents makes our conclusion clear. Appellee and Ms. Taylor-Christensen, by affixing their signatures to these important legal documents, expressed their collective intent that they would share a property interest in this car. By statute, Appellee was a co-owner because he held legal title to the car. §§ 316.008(26), 322.01(30), 324.021(9)(a), Fla. Stat. (2005). Appellee retained the “absolute” legal right to encumber the car or sell it without the join-der of Ms. Taylor-Christensen. § 319.22(2)(a)l„ Fla. Stat. (2005). If Ms. Taylor-Christensen had predeceased him, he also retained the right of survivorship in the car. § 319.22(2)(a)l., Fla. Stat. (2005). Appellee consciously retained an interest in the car despite his “gift” of co-ownership, and he did nothing to divest himself of that interest at anytime thereafter.
Nor can Appellee avoid liability in this situation by evidence that he did not use the car or control its use after it was acquired from the dealer. Ownership and possession are distinct concepts. A property interest is based on the right to control, not the exercise of that right. On these facts, it makes no difference to the outcome whether the collision occurred two years or two seconds after the car was taken from the dealership because Appel-lee’s theory is that the completed gift occurred at the time the car was purchased from the dealer. All of the evidence pertaining to his lack of use of the car after it was acquired is simply immaterial. Nor should his legal interest in the car turn on his on-again-off-again use or non-use of it. This is especially true where, as here, Ms. Taylor-Christensen’s use of the car was not inconsistent with Appellee’s ownership *142 interest in it because she shared co-ownership with him. Stated differently, his acquiescence to her use of the car, even her exclusive use, was not repugnant to his legal status as co-owner.
We think our conclusion on both of these points — Appellee’s subjective intent and his non-use — is amply grounded in our high court’s decision in Metzel v. Robinson, 102 So.2d 385 (Fla.1958). Met-zel stands for three legal propositions all of which have direct bearing here: (1) as a matter of law, if a person causes or permits his name to be on the title when the vehicle is acquired, he cannot contradict the title by claiming that he did not intend to be an owner at the outset; (2) as a matter of law, once that person has caused his name to be affixed to the title, he must take some affirmative action to divest himself of that interest to avoid liability; and (3) as a matter of law, relinquishing possession of and having nothing to do with the vehicle after its acquisition is not sufficient to divest that person of his legal interest.
The facts in Metzel were that the appellant signed loan documents and took title to a car only to accommodate her eighteen-year-old nephew, who desired to purchase the car but could not obtain financing. After the purchase, the nephew “kept up the payments, and [the] appellant had nothing further to do with the car.” Id. at 385 (emphasis added). While driving the car, the nephew caused an accident, resulting in a claim for damages against the appellant as the titled owner of the car. The lower court directed a verdict for the plaintiff on the issue of the appellant’s vicarious liability. It concluded that the appellant was the legal owner of the car, notwithstanding her subjective purpose in permitting the title to be placed in her name and regardless of the fact that she had “nothing to do with the car” after its purchase. Id. Our supreme court affirmed. It concluded that both the appellant and her nephew were liable, as a matter of law, because both had a “species of ownership” in the vehicle. Id. at 386 (emphasis added).
Here, like in Metzel, Appellee denied that he ever intended to own the car, but he had titled it in his name as a part of the purchase/gift transaction. He claimed to have nothing to do with the car after its acquisition, except for a brief trip to the car wash in it the next day. However, after he caused title to be placed in his name as co-owner, he failed to do or even say anything to “divest [himself] of [his] title to the car.” Metzel, 102 So.2d at 386 (emphasis added). By virtue of his titled ownership, Appellee retained the right to exercise control over the car at any time, just as the appellant in Metzel had done. Therefore, as a matter of law, Appellee remained legally responsible for its negligent operation because he retained some “species” of ownership.
Appellee dismisses Metzel as a case that turned on the fact that the nephew resided with the aunt. He argues that this fact was what caused the court to conclude that the titled owner still had the ability to exert some control over the car. The problem with this proffered basis for distinction is that it is factually unsupported and legally untenable, especially in light of the supreme court’s later pronouncement in Aurbach. As for the factual part, the Metzel opinion notes only that the nephew “lived” with his aunt in Washington, D.C., at the time the car was purchased. Nothing in the opinion gives credence to the assertion that he still lived with her in Washington at the time of the crash in Miami, Florida. And nothing in the opinion suggests that this alleged fact had any legal significance to the holding.
*143 An even more compelling contradiction to Appellee’s position, however, is that Aurbach put to rest the notion that common residence has any legal significance on vicarious liability. In Aurbach, the court held that, as a matter of law, a father could not be liable for the negligence of his minor daughter, even though the jury had determined, as an ostensible finding of fact, that he had the “right to control” the car by virtue of the fact that she was a minor who lived in the same household. 753 So.2d at 64. Instead, in reliance on Metzel, our high court determined that liability could not be attributable to the father because his name was not on the title. Id. When stating the holding in Met-zel, the Aurbach court said that “because the aunt took no action to divest herself of the title to the car, the Court determined that she was the ‘owner’ of the automobile as a matter of law.” Id. Significantly, both Metzel and Aurbach were determined as a matter of law. Had the issue of control, based on cohabitation or otherwise, been a relevant factor in either case, neither case could have been decided without a jury determination of who had “control” of the vehicle.[9]
The clear holding of Aurbach is that the “right” of control follows ownership, not use or exercise of control. The Aurbach court categorized Palmer and its progeny as establishing an “extremely limited” exception for the legal title owner to “escape” vicarious liability. Aurbach, 753 So.2d at 63-64. Here, Appellee, the titled owner, seeks to avoid liability by arguing that he did not exercise control even though he might have had the legal right. Appellee’s attorney successfully argued to the jury that Appellee’s failure to exercise actual control was tantamount to not having any “right” to control. That argument was a distortion of the law; it is the precise argument that was rejected in Aur-bach. We are circumspect to extend the “extremely limited” exception in Palmer to this case, especially against an evolving statutory backdrop that evinces a legislative intent to impose liability on the title holder absent clearly defined circumstances.
If Appellee is correct, then it logically follows that Appellee could have avoided liability even if his name was the sole name on the title. This hypothetical variant illustrates the fallacy in Appellee’s contention that the resolution of this case is as simple as a jury instruction informing the jury that it must find that the defendant is both the title holder and has a right of control before it can hold him vicariously liable. Such an instruction might make sense in the context of the facts of Aur-bach, where the jury had determined that the father had the “right of control” but not legal title. When the converse is the case, assuming that a jury question is presented, the instruction should focus on the legal doctrine that pertains to the theory advanced as an “exception.” For example, a jury instruction might read:
*144 The holder of legal title is presumed liable for the negligence of the permissive user, unless, prior to the collision, the holder of legal title had made a bona fide transfer of all of his interest in the vehicle by sale [or gift], so that the title holder retained no beneficial interest in the vehicle after the sale [or gift].
In those rare circumstances where a disputed, material issue of fact exists, an instruction such as this will permit the jury to resolve the fact dispute and apply the law to reach a conclusion. In most circumstances, as the decisional law bears out, the court determines who owned the car at the time of the collision.
In her dissent, Judge Griffin speculates that the gift might have occurred at some unspecified point in time after the purchase transaction. She makes note of the limited record — suggesting perhaps that the record is incomplete. Her dissent also cites to an affidavit of Appellee not admitted at trial.[10] Finally, it urges that Appel-lee’s admission regarding his intent in “signing] the [purchase] documents” is ambiguous and could have been clarified by Appellee. All of this discussion ignores that it was Appellee’s burden to overcome the legal presumption that the title document accurately reflects the identity of the owner(s). Johnson v. Sentry Ins., 510 So.2d 1219 (Fla. 5th DCA1987).
We attribute no significance to the limited record. The issue on appeal is a narrow one. The rules contemplate that lawyers will send only those portions of the record that are necessary for review of the issues on appeal. See Fla. RApp. P. 9.200(b)(1). Appellee had the right to designate portions of the record and transcript for our consideration. Nor do we attribute significance to Appellee’s affidavit because it was not admitted at trial. Even if this evidence is considered, however, it is entirely consistent with Appellee’s trial testimony that he made the gift at the time he purchased the car, and it completely undermines the dissent’s criticism of our interpretation of the trial testimony. If, as Appellee said in his affidavit, he was unaware that his name was on the title, then, in his mind, the gift was complete at the time the car was purchased. The obvious trouble with this position for Appellee is that he may not contradict the documents by claiming that he did not read or understand what they plainly said. That is the point of Deangelo and Metzel. Contrary to the dissent’s argument, the dissent-labeled “HAC” theory is not a new theory. Appellant’s theory has always been that the title document controls. The document reflects that Appellee and Ms. Taylor-Christensen are co-owners. Without dispute, Appellee paid the entire purchase price for the car. Ignoring as irrelevant Appellee’s subjective purpose for signing the documents, the only conclusion that may be drawn from the evidence is that Appellee gifted an undivided interest to Ms. Taylor-Christensen at the time the car was acquired. There is simply no evidence that he gifted anything else to her at any later time.
The purchase and ownership of a vehicle is not like the purchase and ownership of a television. A vehicle is a dangerous instrument, the mere ownership of which gives rise to serious responsibility and potential liability. Its acquisition and ownership are highly regulated by statutes and rules, which should not be circumvented by something as elusive as one’s after-the-fact characterization of his or her subjective belief. The form application for title is mandated by law and given under penalty *145 of perjury. One must swear that he or she is the owner of a car to obtain title. § 319.28, Fla. Stat. (2012). Had Appellee desired to make a gift of something more than a co-ownership interest in the car, so as to avoid future responsibility, all he needed to do was direct the salesman to make his wife the sole owner. Instead, inexplicably, he intentionally retained a legal interest in the car as co-owner. In doing so, he retained the power to use, transfer, and encumber it. He also retained survivorship interests in the car. These “species” of ownership include the concomitant liability of an owner.
We certify the following question to the Florida Supreme Court as one involving great public importance:
May a person who intentionally directs that title be issued in his name as co-owner, by completing a sworn application for title in conjunction with the purchase of a vehicle, avoid liability under the dangerous instrumentality doctrine by claiming that he never intended to be the owner of the vehicle and further claiming that he relinquished control to a co-owner of the vehicle?
REVERSED AND REMANDED; QUESTION CERTIFIED.
ORFINGER, C.J., LAWSON, EVANDER and COHEN, JJ., concur.
GRIFFIN, J., dissents, with opinion in which SAWAYA and PALMER, JJ., concur.
SAWAYA, J., dissents, with opinion in which PALMER, J., concurs.
JACOBUS, J., recuses.

. We grant en banc review to maintain uniformity in this Court’s decisions.

. The fifth affirmative defense is apparently based on the limitation of liability set forth in section 324.021(9)(b)3., Florida Statutes (2005). We express no opinion on the applicability of this statute because it has not yet been addressed below.

. See 49 U.S.C. § 30106.

. The same language was in effect at the time of this 2005 accident.

. Appellant’s claim is based on the common law dangerous instrumentality doctrine. She did not assert liability based on section 324.021(9)(b)3., Florida Statutes, which imposes liability on an owner who permits another to use his or her vehicle. Had that theory of liability been asserted, arguably, the statutory definition of "owner” would control.

. To date, the Florida Legislature has not expressly manifested an intent to preempt the entire subject area of when the holder of "legal title” may avoid liability. Whether an express manifestation of intent to preempt is necessary is not entirely clear. See Broward v. Broward, 96 Fla. 131, 117 So. 691 (1928) (comprehensive statute designed to regulate entire subject supersedes common law; statute may expressly or by implication supersede common law). If the common law can be superseded by implication, it seems that we are at or near that point, at least to the extent that we are addressing the liability of a title holder who is a "natural person.” See § 319.22(1), Fla. Stat. (2012) (expressly prohibiting court from recognizing any ownership interest in any vehicle unless the interest is documented in certificate of title).

.When Palmer was decided, there was no statutory protection from liability for a conditional sale vendor who retains title as security for payment. This exception is now embodied in the statutory definition of "owner,” which makes clear that, in the case of a conditional sales agreement, the contract "vendee,” not the “vendor,” is deemed the "owner." § 316.003(26), Fla. Stat. (2011).

. Appellee argues that it is significant that he never received the title after it was issued, as if he had no notice that title was in his name. The fact is that he signed the paperwork that listed Ms. Taylor-Christensen’s address as his own address.

. Appellee would also have us distinguish Metzel because, there, the aunt bought the insurance for the car as required by law because she was the sole titled owner. Here, by contrast, Ms. Taylor-Christensen purchased the insurance for the car. Nothing in Metzel suggests that this fact had any bearing on the holding. Only a titled owner may procure insurance for a vehicle. Here, both Ms. Taylor-Christensen and Appellee were on the title and either could procure insurance. When the Aurbach court discussed Metzel and restated its holding, it did not mention this fact. Indeed, in Aurbach, the plaintiff attempted to hold the father responsible because all of the expenses for the car were purchased using funds from his joint account. This argument was squarely rejected. Once again, had the insurance issue been a relevant factor, neither case could have been determined as a matter of law.

. The affidavit is not in the record on appeal. The motion for summary judgment filed by Appellee references the substance of the affidavit.